**HOLESKI, Appellant,**

v.

**LAWRENCE et al., Appellees.**

[Cite as *Holeski v. Lawrence* (1993), 85 Ohio App.3d 824.]

Court of Appeals of Ohio,
Geauga County.

No. 92–G–1702.

Decided April 2, 1993.

*Barry M. Byron,* for appellant.

*Forrest W. Burt,* for appellees Clay Lawrence and James A. Montague.

*Jerry A. Petersen* and *Jeffrey T. Orndorff,* for appellees Chester Township Board of Trustees and Janice Koster.

---

FORD, Presiding Judge.

This case comes from the Geauga County Court of Common Pleas. Appellant, Kenneth M. Holeski, timely appeals the trial court's order granting appellees' motions for summary judgment. Appellees Clay Lawrence and James Montague

are members of appellee Chester Township Board of Trustees. At the time of this action, appellee Janet Koster was the Clerk of Chester Township.

On May 10, 1990, the board created an *ad hoc* committee to study whether it would be feasible for Chester Township to create the position of Township Administrator. Appellant was appointed to the committee, and the board directed this committee to appear at a meeting on March 28, 1991. This meeting was attended by two of the three committee members, namely, appellant and Sherri Lammermeier. Of the three members of the board, Lawrence and Montague were present.

During this meeting, appellant submitted a report which purported to be a product of the committee, but which was in actuality plagiarized solely by him from a previous township report on the same issue. Immediately after the meeting, as appellee Lawrence and Lammermeier were exiting the meeting room and heading toward the trustees' office, Lammermeier pointed out this plagiarism to Lawrence. Lawrence immediately summoned to the trustees' office both the press, which had been present for the regular meeting, and appellee Montague, who was still in the public meeting room gathering his personal effects. Appellant had already left the building by this time.

While in the trustees' office, the board, Lammermeier and several members of the press examined the two reports, and determined that appellant had indeed plagiarized the initial trustees' report. The board subsequently made comments in this regard to the press. In the following week, several newspaper articles appeared concerning this incident.

On April 10, 1991, appellant's counsel sent a letter to appellees Lawrence and Montague claiming that a violation of R.C. 121.22, the Sunshine Law, had occurred. When Lawrence and Montague did not respond, appellant filed a complaint against them for an injunction and other equitable relief. Appellant alleged that this "press conference" constituted a formal meeting in which public business was discussed during the exclusion of the public and in violation of the Sunshine Law.

On December 22, 1991, appellant filed an amended complaint naming the board as an entity and Janice Koster, Clerk of Chester Township, as additional defendants in the suit. After denying the specific allegations of the violations, appellees board and Koster filed a motion for summary judgment on March 13, 1992, with exhibits and depositions attached to their memorandum in support. On March 23, 1992, appellees Montague and Lawrence also filed a motion for summary judgment, which incorporated the exhibits and depositions of appellees board and Koster.

April 13, 1992, appellant filed a brief in opposition with supporting affidavits. On April 15, 1992, the trial court granted summary judgment "dismissing" the amended complaint. Appellant's notice of appeal was timely filed with this court on May 8, 1992.

Appellant raises the following assignments of error:

"1. The trial court erred in granting summary judgment 'dismissing' the amended complaint in this action.

"2. The trial court erred in denying or ignoring the request of plaintiff, pursuant to Rule 56(D) Ohio Rules of Civil Procedure, for a determination of those facts not in controversy."

Under his first assignment of error, appellant raises three issues for our review: (1) whether the press conference held by appellees Lawrence and Montague was a meeting held in violation of the Sunshine Law because they conducted without notice a prearranged discussion of public business, and took formal action by making a decision not to adopt appellant's report; (2) whether the board failed to adopt a rule providing a reasonable method under which any person may determine the time, place and purpose of any special meeting of the board; and (3) whether the board and the clerk, Koster, violated R.C. 121.22(C) by failing to promptly record minutes of their meetings and to make the minutes open to the public.

■ The traditional standard of proof for seeking injunctive relief is clear and convincing evidence. See *Household Finance Corp. v. Altenberg* (1966), 5 Ohio St.2d 190, 34 O.O.2d 348, 214 N.E.2d 667.

As to the first issue under appellant's assignment of error, appellant argues that the prearranged nature of this alleged meeting was clearly shown by the fact that appellees Lawrence and Montague hailed the press after their regular meeting. He also urges this court to reconsider the issue whether R.C. 121.22 requires that action in the form of a decision be taken by the board in order for a discussion to constitute a "meeting" as defined by the statute.

Appellant argues that R.C. 121.22 contains no requirement that any action be taken in order to meet the statute's definition. He asserts in the alternative that in this case, formal action, in the form of a decision as to his report, was in fact taken.

R.C. 121.22(B)(2) defines "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members." The statute further states that "(H) [a] resolution, rule, or *formal action* of any kind is invalid unless adopted in an *open meeting* of the public body." (Emphasis added.)

Thus, the logical interpretation of subsection (B)(2) is that no formal action is required, *per se,* in order to constitute a meeting. The board must merely discuss the public business. However, subsection (H) makes it clear that in order to show a violation of the "open meeting" rule as appellant attempts to do here, either a resolution, rule or formal action of some kind must have been adopted by the public body at a meeting not open to the public. Thus, the logical inference stemming from section (H) is that any activity *not* qualifying as either a rule, resolution or formal action does not have to be adopted at an open meeting in order to be valid. Hence, public notice need only be given when formal action will take place. See *Weisel v. Palmyra Twp. Bd. of Zoning Appeals* (1991), Portage App. No. 2193, unreported, at 10, 1991 WL 132214. See, also, *Greene Cty. Guidance Ctr., Inc. v. Greene–Clinton Community Mental Health Bd.* (1984), 19 Ohio App.3d 1, 4, 19 OBR 46, 49, 482 N.E.2d 982, 986. Accordingly, appellant's argument that the Sunshine Law contains no requirement that action of any kind be taken in order to meet the statutory definition of "meeting" has no merit.

The nature and purpose of R.C. 121.22 support the interpretation that the statute is intended to apply to those situations where there has been actual formal action taken; to wit, formal *deliberations* concerning the public business. Ohio's courts have recognized that information-gathering and fact-finding are essential functions of any board, and that the gathering of facts and information for ministerial purposes does not constitute a violation of the Sunshine Law. See *McIntyre v. Bd. of Cty. Comms.* (Sept. 12, 1986), Ashtabula App. No. 1269, unreported, at 11, 1986 WL 10021.

Similarly, in the case of *Theile v. Harris* (June 11, 1986), Hamilton App. No. C–860103, unreported, at 13, 1986 WL 6514, the court ruled that a meeting between the county prosecuting attorney and a majority of a board of township trustees, although unadvertised, was not a violation of the Sunshine Law because the meeting was strictly of an investigative and information-seeking nature, and did not involve actual deliberations of public business.

Accordingly, since appellant in the case at bar alleges that the "open meeting" rule has been violated, we must first determine whether any rule, resolution or formal action was adopted which would necessitate public notice.

With respect to the "press conference," the record clearly supports appellees' contentions that the trustees were not formally deliberating whether to hire a township administrator, which was the substance of appellant's report. Rather, the trustees, together with the press, were instead merely investigating the authenticity and originality of this report. Thus, it is clear that the trustees met in a ministerial, fact-gathering capacity, which, as previously stated, does not necessitate that appellees conduct an "open meeting" pursuant to R.C. 121.22(H).

Though our conclusion that no "meeting" took place for purposes of the Sunshine Law obviates the need to discuss whether this "press conference" was open to the public, we do so in order to fully address the issues before us.

Contrary to what appellant alleges, there is no evidence whatsoever to indicate that the public was excluded from this "press conference." The trial court's judgment entry states as a fact not in dispute that "the discussions were held behind closed doors." The court was apparently relying on the affidavit of Kristine Rosie, which was attached to appellant's motion for summary judgment, in which she stated that appellee Montague closed the door to the trustees' office.

Though the lower court's statement does not necessarily mean that the public was in any way excluded from the "press conference," our review of the affidavits of Lawrence, Montague, Annie Kmiecik and Lammermeier supports appellees' assertions that the door to the trustees' office was left open while this "press conference" was taking place, and that no member of the public was excluded. Appellant has not shown that any member of the public or press attempted to gain admission to the trustees' office and was denied admission. In fact, that the trustees chose to reveal appellant's indiscretion to the press indicates their desire to make the matter one of public record.

Together, these facts negate appellant's argument that appellees' excluded the public from their investigation and sought to make it a clandestine affair. Therefore, at minimum, there remains a genuine issue of fact on this subject.

We do not, however, conclude that genuine issues of *material* fact remain so that summary judgment was inappropriate. As stated previously, the issue of the "openness" of the meeting is a nullity in light of our conclusion that no formal deliberations, and hence no "meeting," took place at the board's "press conference." Thus, the issue of whether the "press conference" was indeed open to the public is in no way material to our disposition of this appeal. Hence, the existence of remaining issues of fact with respect to nonlitigable questions does not necessitate a remand for further proceedings.

■ Following this argument further, the law is also clear that the Sunshine Law is not intended to prevent a majority of a board from being in the same room and answering questions or making statements *to other persons who are not public officials,* even if those statements relate to the public business. The Sunshine Law is instead intended to prohibit the majority of a board from meeting and discussing public business *with one another.* This view is expressed in the case of *DeVere v. Miami Univ. Bd. of Trustees* (June 10, 1986), Butler App. No. CA85–05–065, unreported, 1986 WL 6763. In *DeVere,* the Twelfth District Court of Appeals determined that "discussion" of the public business means the exchange of words, comments or ideas *by the board.*

In the case *sub judice,* we do not have a situation where the trustees closed the doors and conducted a private meeting between themselves about the contents of appellant's report. Instead, we have a situation where the trustees engaged in an informal, information-gathering, question-answer session with the press in a room which any member of the public could have entered. Therefore, there is no indication that appellees' conduct was contrary to the spirit of the Sunshine Law or rose to the level of a secret meeting.

■ We also disagree with appellant's assertion that this "press conference" was prearranged. The facts surrounding this incident simply do not support appellant's argument. First, Lawrence and Montague did not find out about appellant's indiscretion until after the regular meeting had adjourned. Second, several members of the press were already present when Lawrence sought Montague's assistance in determining the authenticity of appellant's work. Therefore, since appellees Lawrence and Montague spontaneously summoned the press, who were already present, it could hardly be termed a "prearranged meeting."

The record here simply does not support the argument that this "press conference" was prearranged. Therefore, because it also did not result in actual deliberations of the public business, and did not therefore violate the "open meeting" rule, we cannot agree with appellant that appellees violated the Sunshine Law. See *Greene–Clinton Community Mental Health Bd., supra,* at paragraph two of the syllabus.

Under the second issue of appellant's first assignment, he argues that appellees' "rule" regarding notices of special meetings is nothing more than a statement of intent to comply with the Sunshine Law. The "rule," which is in the form of an annual resolution, states as follows:

*"TRUSTEES' MEETINGS*

"92–032 Mr. Montague moved * * * that all meetings of the Chester Township Board of Trustees be held in accordance with the ORC and Sunshine Law and that 24 hours of notice be given to the news media with the exception of emergency meetings. * * * "

We note that R.C. 121.22(F) treats notice of regularly scheduled meetings, special meetings, and emergency meetings differently. The statute requires each public body, by rule, to set up a method under which any person may determine the time and place of all regularly scheduled meetings, and the time, place and purpose of all special meetings. As to special meetings, the public body is required to give at least twenty-four-hour notice to the news media. Emergency meetings require immediate notice to the media.

■ In the instant case, though we would like to see the board fashion a rule that goes beyond minimal compliance with the statute, we conclude that it provided a reasonable method of notification. Appellees' rule incorporates and refers to R.C. 121.22, which makes it fairly simple for anyone to find out what the acceptable notification methods are. Additionally, appellee board's requirement that twenty-four hours of notice be given to the news media allows anyone wishing to learn where, when and why a meeting is being conducted to just check the newspapers.

The board's rule requires that "*all* meetings * * * be held in accordance with the * * * Sunshine Law." (Emphasis added.) Therefore, the logical inference is that the board intended compliance with the Sunshine Law with respect to each of the three types of meetings: regular, special and emergency. Also, as to both regular and special meetings, appellees' rule requires twenty-four-hour notice to the media, which goes beyond the mandate of the statute. The statute requires twenty-four-hour notice to the media only in the event of a special meeting.

This issue was recently examined by the Ninth District Court of Appeals in *Barbeck v. Twinsburg Twp. Bd. of Trustees* (1992), 73 Ohio App.3d 587, 597 N.E.2d 1204. The court addressed the question of what sort of a rule must be adopted by a public body, and the circumstances under which the adequacy of the rule can be subject to attack.

The *Barbeck* court noted that any references to specific notification methods were conspicuously absent from R.C. 121.22(A), and that R.C. 121.22(A) merely required establishment of "reasonable methods" by which to determine the time, place and purpose of regular meetings. *Id.* at 10–11. The court also noted that the statute does not state "that absent such a 'rule,' the action adopted is invalid." *Id.*

■ As the *Barbeck* court pointed out, and we agree, in order to invalidate formal action taken by a public body, there must have been a violation of the "open meeting" rule. No mention is made of a requirement that the plaintiff, in establishing such a violation, prove that formal notice procedures were absent from the board's rule or resolution, which is what appellant attempts to demonstrate here.

Last, we note that appellant does not claim that he personally did not receive notice of any of the meetings. He merely claims that appellees' rule is insufficient. Thus, there is no evidence that appellant has been harmed in any way by appellees' rule. Absent evidence that this alleged error has substantially affected appellant's rights, we must disregard the claim as harmless error. Civ.R. 61.

We are not, as appellant suggests, unmindful of R.C. 121.22(I)(3), which states that:

"Irreparable harm and prejudice to the party that sought the injunction shall be conclusively and *irrebuttably presumed* upon proof of a violation or threatened violation of this section." (Emphasis added.)

Appellant argues that this section precludes him from having to prove that he has been harmed because it presumes prejudice to the party seeking an injunction. However, appellant overlooks the fact that this presumption is operative only "upon proof of a violation or threatened violation." Consequently, our conclusion that no violation has occurred negates the operation of this section of the statute.

As to the third issue under appellant's first assignment, he argues that the failure to prepare and approve minutes is a common problem in Chester Township. He bases this argument on the "judicial admission" of Forrest Burt, counsel for appellees Lawrence and Montague, who stated during a deposition that there were other meetings for which his client had not produced minutes. Appellant's argument is not well taken.

First, we note that any comments by Burt on behalf of Koster do not constitute evidence because he does not represent Koster in this action.

Second, such comments by Burt do not rise to the level of a judicial admission because there is no indication that the statement was intended to dispense with formal proof of material facts for which witnesses would otherwise be called at trial. See *Harrison Constr. Co. v. Ohio Turnpike Comm.* (C.A.6, 1963), 316 F.2d 174, 177.

Third, it is undisputed that the missing minutes from the May 31, 1990 meeting were from a period of time when Koster was under treatment for cancer and was so sick that she could not attend to her duties in the normal fashion. Aside from our consideration of the human physical condition, we agree with the trial court that this issue is moot because the minutes were eventually filed.

We note that Koster ultimately produced the minutes, albeit not until December 1991. Even though Koster was tardy in producing these minutes, appellant has put forth no evidence whatsoever that he has been injured in any way by Koster's untimeliness. In fact, appellant's only claims of injury stem from the March 29, 1991 meeting during which this alleged "press conference" took place. Thus, absent any allegation of harm, or any proof of a violation of the law by way of a total failure to file the minutes, we must, again, disregard appellant's claims on this issue.

Finally, appellant has not shown that Koster's oversight was intentional, which is required for us to determine that the issue of her untimeliness is not moot. In the matter of *State ex rel. Plain Dealer Publishing Co. v. Barns* (1988),

38 Ohio St.3d 165, 527 N.E.2d 807, the Ohio Supreme Court determined that the issue of Cleveland City Council providing notice to the press of their meetings was *not moot,* even after the fact, because council had engaged in a continuing practice of excluding the press. The court thus determined that the issue was not moot because of this intentional, repeated exclusion.

In the case at bar, there is no indication whatsoever that Koster's oversight was intentional, or a "continuing practice," as in the *Plain Dealer* case. Thus, employing the logical reasoning of that case to this one, in the absence of repeated, intentional omissions on the part of Koster, we deem the issue to be moot.

Under his second assignment, appellant suggests that the trial court failed to specifically set forth the material facts which are not in dispute pursuant to Civ.R. 56(D).

Appellant's argument is not well taken because Civ.R. 56(D) contemplates a situation where summary judgment is not rendered upon the whole case, and where a trial is necessary on the remaining controverted facts. This is not the situation here. Accordingly, appellant's second assignment has no merit.

Based on the foregoing, we conclude that appellant's assignments of error have no merit. Accordingly, the order of the trial court granting appellees' motion for summary judgment is affirmed.

*Judgment affirmed.*

JOSEPH E. MAHONEY and NADER, JJ., concur.