OPINION
Plaintiffs-appellants Aaron and Jenny Tharp appeal the December 16, 1999, Judgment Entry of the Stark County Court of Common Pleas granting summary judgment in favor of defendant-appellee Betty Whiteleather.
 STATEMENT OF THE FACTS AND CASE
On November 12, 1998, plaintiffs-appellants Aaron Tharp and Jenny Tharp filed a Complaint against defendant-appellee Betty Whiteleather to recover damages resulting from an automobile collision between Aaron Tharp and Betty Whiteleather. The automobile accident occurred at 7:00 A.M. on January 5, 1998. The collision occurred at a four way intersection. Aaron Tharp stopped at the intersection, facing flashing red lights. Appellee was not required to stop at the intersection, although she did face flashing yellow lights. There is no dispute that Aaron pulled his vehicle into the intersection, right into the path of appellee. The collision followed immediately. On August 25, 1999, appellee filed a Motion for Summary Judgment. By a Judgment Entry filed December 16, 1999, the trial court granted summary judgment in favor of appellee. It is from the December 16, 1999, Judgment Entry that appellants raise the following assignments of error:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT DEFENDANT-APPELLEE WAS TRAVELING IN A LAWFUL MANNER, DESPITE HER ADMITTED SPEED OF 55 MPH, OR 15 MPH OVER THE "MAXIMUM SAFE SPEED" FOR THE INTERSECTION (40 MPH) AS DETERMINED BY THE OHIO DEPARTMENT OF TRANSPORTATION (ODOT), AND GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
 II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN THIS COMPARATIVE NEGLIGENCE CASE WHERE PLAINTIFF PRESENTED SUBSTANTIAL EVIDENCE OF BOTH DEFENDANT'S IGNORANCE AND FAILURE TO OBSERVE RUDIMENTARY TRAFFIC SAFETY LAWS AND REQUIREMENTS, WHICH EVIDENCE IF ACCEPTED BY THE JURY WOULD RESULT IN DEFENDANT'S LOSS OF HER RIGHT-OF-WAY, AND A FINDING THAT DEFENDANT WAS MORE THAN FIFTY (50%) PERCENT AT FAULT IN CAUSING THE COLLISION.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36, 506 N.E.2d 212. Civ.R. 56(C) states in pertinent part: Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the nonmoving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the nonmoving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the nonmoving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429,674 N.E.2d 1164 (citing Dresher v. Burt (1966), 75 Ohio St.3d 280,662 N.E.2d 264). It is based upon this standard that we review appellants' assignment of error.
 I
Appellants contend that the trial court erred when it concluded that appellee was traveling in a lawful manner, despite appellee's admission that she was traveling 55 miles per hour [hereinafter MPH] upon a portion of road which had been posted with an advisory speed of 40 MPH. Appellants conclude that the trial court thereby erred when it granted appellee's Motion for Summary Judgment. We disagree. An advisory speed limit is not an enforceable speed limit. Ramos v. Kalfas (May 19, 1994), Cuyahoga App. No. 6 CV-219924, unreported, 1994 WL 197273. In Ramos, the Eighth District Court of Appeals noted that an advisory speed sign is but one factor which might be relevant in determining reasonable operation of a motor vehicle. The court stated that whether a driver reasonably operates a vehicle in excess of an advisory speed limit does not necessarily create a jury issue as to the lawfulness of one's travel, depending upon all of the facts and circumstances of any given case. The evidence presented shows that speed was not a factor in the accident. The investigating officer and an independent witness, Oscar Alvarez, testified that appellee was traveling at a reasonable speed and that speed was not a factor in causing the accident. Alvarez was stopped at the same intersection as appellant Aaron Tharp but was traveling in the opposite direction. In other words, as Alvarez and appellant were stopped at the intersection, they were facing each other. Alvarez testified that appellant pulled out into the path of appellee's vehicle and that there was nothing appellant could do to avoid the accident. Construing the evidence in favor of appellants, there is no genuine issue of material fact for trial as to whether appellant was traveling within the posted speed limit or at a reasonable speed. In addition, there is no genuine issue of material fact as to whether appellee's speed played a role in causing the accident. Appellants' first assignment of error is overruled.
 II
In the second assignment of error, appellants argue that the trial court erred as a matter of law in granting summary judgment when appellants presented substantial evidence of appellee's ignorance of and failure to observe rudimentary traffic safety laws and requirements. Appellants concede that appellee initially had the right of way. However, appellants submit that evidence shows that appellee did not understand the significance of the advisory speed limit posted in her lane of travel and the flashing light she faced at the intersection and that appellee was driving her vehicle without using her headlights, at a time of day at which headlights were required. Appellants contend that this evidence creates a question of fact as to whether appellee lost her right-of-way and whether a jury could find that appellee was more than 50% at fault in causing the collision. We disagree. Appellants assert that the issue of comparative negligence should have been submitted to the jury for determination. Appellants argue that it is a rare circumstance under which a trial court can take away a jury's duty to apportion fault. Appellants argue that the trial court may grant summary judgment only when, as a matter of law, and while construing the evidence most strongly in favor of the appellants, that the appellee is without fault and free of negligence. We find that summary judgment was appropriate under the circumstances of this case. A. Appellants cite this court to R.C.4511.15(B) which requires a driver facing a flashing yellow light to proceed with caution. Appellants contend that because appellee admitted in her deposition that she did not know what a yellow flashing light meant, appellee could not have proceeded through the intersection with caution and therefore forfeited her right-of-way. Appellants conclude that appellee's Motion for Summary Judgment should have been denied. We disagree. While appellee admitted that she did not understand the meaning of the yellow flashing light, that is not a showing that she failed to proceed with caution so as to forfeit her right-of-way. Appellants have provided no evidence that appellee failed to proceed with caution through the intersection. The evidence presented by the appellants regarding this issue is an expert's testimony that "[t]raveling at any speed higher than the Advisory Speed is unsafe and poses a risk to drivers on SR153/CR 106, such as Aaron Tharp, passing through or waiting at the intersection. . . . That traveling at 54 or 55 through the subject intersection, such as the Whiteleather vehicle was traveling, was unsafe and created a serious risk of collision with other vehicles waiting to enter the intersection, such as Mr. Tharp's Van." Affidavit of James D. Madden, Professional Engineer. However, the eyewitness testimony, as well as the testimony of the State Trooper involved in the investigation, establish that appellee was proceeding at a reasonable speed under the circumstances and that speed was not a factor in the accident. In other words, there was no evidence indicating that appellee's speed contributed to the cause of the accident. B. Further, appellants argue that the evidence and material admissions of counsel created material issues of fact as to whether appellee was operating her vehicle with only her Daytime Running Lamps illuminated, at a time of day during which the use of headlamps was required by R.C. 4513.03. If there is a material question as to whether appellee was driving without her headlights, in violation of R.C. 4513.03, summary judgment may have been inappropriate. However, we agree with the trial court that there was no evidence supporting the allegation that appellee was driving with only her daytime running lights on. This collision occurred at 7:00 A.M. on January 5, 1998. Appellants presented evidence that sunrise on that morning was at 7:49 A.M. Thus, pursuant to R.C. 4513.03, appellee was required to have her headlights on at the time of the collision. At deposition, appellee, Betty Whiteleather, gave the following testimony: Q. Do you recall if the daytime lights were on or the headlights? A. The headlights were working. Q. You think or you're not sure? A. The lights were on. Q. Was it the daytime running lights or the regular headlights? You know the difference, right? There's a daytime running light that comes on all the time if you have a certain model car. A. Uh-huh. Q. And then there's — A. The headlights. Q. But you still have to switch it to headlights if you want the regular headlights on? Are you aware of that? A. I think it depends on what vehicle you're in. Q. It may. Does yours have a switch that allows you to switch it from daytime running to night headlights? A. I couldn't tell you that. I only had the vehicle ten days or twelve days.
Whiteleather Depo. at 24-25. The disinterested witness, Oscar Alvarez, testified that appellee approached the intersection with her headlights on. Alvarez testified as follows: Q. Was it dark? A. It was, it was fairly dark. Probably — yeah. Q. Did you have your lights on? A. Yes. Q. Did the Blazer have its lights on? A. Yes. . . . Q. In other words, it's dark. Did you just see headlights coming down the road? Or did you see — could you make out a car when you first saw it? A. Initially just the headlights. And as it approached the intersection, I was able to tell it was a Blazer. . . . Alvarez Depo. at 15.
Q. Were the van's headlights on? A. Yes. Q. And were the Blazer's headlights on? A. Yes.
Alvarez Depo. at 37.
Appellant Aaron Tharp testified that when he first saw appellee, just before the collision, appellee's vehicle had its lights on: A. I got about halfway out into the intersection, caught the headlights out of the corner of my eye, turned right and it was a split second. . . . Tharp Depo. at 41. A. Like I said, I seen the headlights and out of the corner of my eye caught the headlights, turned my head and it was on me. Tharp Depo. at 47 — 48.
From a review of the record, we find no evidence that appellee had only her daytime running lights on. Appellant argues that appellee's counsel made a judicial admission in appellee's Motion for Summary Judgment. In that Motion, appellee's counsel wrote that "[t]here is no evidence that defendant was operating her vehicle in an unlawful manner. Rather, the defendant's daytime running lights were on, and she was traveling within the speed limit." However, we find that the statements of appellee's counsel in the Motion for Summary Judgment were not intended to dispense with formal proof of material facts and therefore, do not rise to the level of judicial admissions. See Harrison Constr. Co. v. Ohio Turnpike Comm. (C.A. 6, 1963), 316 F.2d 174, 177 as cited in Holeski v. Lawrence,85 Ohio App.3d 824, 833, 621 N.E.2d 802. Therefore, we conclude that appellants have failed to produce evidence that appellee forfeited her right of way or was negligent. Even if we were to find that appellee was negligent regarding her speed or usage of insufficient lights, we still would find that the Motion for Summary Judgment for appellee was proper. First of all, there is nothing in the record to indicate that the speed or lights of the appellee contributed to the accident. Secondly, even if the appellee were negligent and this negligence did contribute to the accident, summary judgment was properly granted to appellee because a reasonable person could reach only one conclusion and that is that appellant's contributory negligence was greater than the negligence of the appellee. See Mitchell v. Ross (1984), 14 Ohio App.3d 75, 470 N.E.2d 245. Oscar Alvarez, the eyewitness stopped at the intersection and facing appellant's vehicle, saw appellee's vehicle approaching and "didn't feel safe enough to either cross or turn on to the southbound lane." Alvarez Deposition, p. 32. Mr. Alvarez even went back to the scene of the accident and investigated the line of sight to try to "understand why someone would dart out in front of a vehicle they way he did." Alvarez Deposition, p. 56. Appellant never saw appellee's vehicle until appellant was in the intersection and saw appellee's lights. We may never know why appellant did not see appellee sooner, but there is no evidence to indicate that it was due to appellee's actions on that day. Assignment of error II is overruled.
The judgment of the Stark County Court of Common Pleas is affirmed. By Edwards, J. and Farmer, J. concur. Hoffman, P.J. dissents