The CINCINNATI ENQUIRER, Appellant and Cross–Appellee,

v.

The CINCINNATI BOARD OF EDUCATION et al., Appellees and Cross–Appellants.

[Cite as *Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–100404 and C–100409.

Decided Feb. 18, 2011.

Grayden Head & Ritchey, L.L.P., and John C. Greiner, for appellant and cross-appellee.

Taft Stettinius & Hollister, L.L.P., Mark J. Stepaniak, and Ryan M. Martin, for appellees and cross-appellants.

---

SYLVIA SIEVE HENDON, Judge.

{¶ 1} The Cincinnati Enquirer instituted this action seeking to restrain the Cincinnati Board of Education and its members, Eileen Cooper Reed, Melanie Bates, Eve Bolton, Susan Cranley, Michael Flannery, Catherine Ingram, and Chris Nelms ("the board"), from violating Ohio's Open Meetings Act ("OMA" or "the act").

{¶ 2} The Hamilton County Court of Common Pleas determined that the board had violated the OMA by improperly entering into executive session during a public meeting. The court entered summary judgment in favor of the Enquirer and issued an injunction ordering the board to comply with the OMA at its future meetings. The court ordered the board to pay a $500 civil forfeiture and court costs to the Enquirer, and it denied the Enquirer's request for attorney fees. These appeals followed.

### The Background

{¶ 3} On August 27, 2009, Melanie Bates, acting president of the board, convened an emergency public meeting to inform fellow board members of a proposal by several members of the Cincinnati City Council to defer a $2.5 million semiannual payment that the city owed to the board. The semiannual payment was the result of a 1999 agreement under which the city was required to pay the board $5 million annually in lieu of various taxes that the board had the right to assess with respect to Paul Brown Stadium, Great American Ballpark, and other building projects. The city's $5 million payment ("the stadium payment") was to be made in two installments in April and October of each year. The board had used the money from the stadium payment to pay debts related to the school district's building projects.

{¶ 4} During the week leading up to the emergency meeting, two members of the city council had contacted Bates to discuss the potential deferral of the city's October 2009 stadium payment in an effort to address the city's budget problems. Bates and Jonathan Boyd, the board treasurer and the school district's chief fiscal officer, met with the two council members.

{¶ 5} When Bates learned that members of the city council were planning a press conference to announce the proposed deferral of their stadium payment,

she called an emergency public meeting of the board. At the beginning of the board meeting, Bates described her recent conversations with the city council members regarding the deferral proposal. Board member Catherine Ingram made a motion that the board enter into executive session to discuss "legal issues" surrounding the proposal with the board's legal counsel. The motion was approved, and the members met privately.

{¶ 6} In addition to Boyd and other district employees, the board's general counsel, bond counsel, and tax counsel were present in the private session. The board members did not discuss the deferral proposal with each other, but asked questions of legal counsel. Counsel explained the stadium-payment agreement and the obligations it entailed. The board reached no decision and took no action during or as a result of the session.

### The Open Meetings Act

{¶ 7} In its sole assignment of error, the board argues that the trial court erred by granting summary judgment in favor of the Enquirer. The board contends that it did not violate the OMA by meeting privately with counsel because the so-called "executive session" was not a meeting as defined by the act.

{¶ 8} Our review of a summary judgment is de novo.[1] Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, with that party being entitled to have the evidence construed most strongly in his favor.[2]

{¶ 9} The OMA, R.C. 121.22, seeks to prevent public bodies from engaging in secret deliberations with no accountability to the public.[3] Under the act, public officials are required "to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law."[4]

{¶ 10} Under R.C. 121.22(C), "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." A resolution, rule, or formal action by a public body is invalid unless (1) it was adopted in an open meeting and

---

1. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

2. See *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

3. *State ex rel. Cincinnati Post v. Cincinnati* (1996), 76 Ohio St.3d 540, 544, 668 N.E.2d 903; see also *State ex rel. Cincinnati Enquirer v. Hamilton Cty. Commrs.*, 1st Dist. No. C–010605, 2002-Ohio-2038, 2002 WL 727023.

4. R.C. 121.22(A).

(2) it did not result from nonpublic deliberations "unless the deliberations were for a purpose specifically authorized" by the act.[5]

{¶ 11} To violate the OMA, a public body must simultaneously (1) conduct a "meeting" and (2) "deliberate" over "public business."[6] The act defines a meeting as "any prearranged discussion of the public business of the public body by a majority of its members."[7] A discussion entails " 'an exchange of words, comments or ideas' " by members of the public body with one another.[8]

{¶ 12} The OMA does not define the term "deliberations," but this court has held that a public body deliberates "by thoroughly discussing all of the factors involved [in a decision], carefully weighing the positive factors against the negative factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects th[e] legislative process."[9] Deliberations involve "more than information-gathering, investigation, or fact-finding,"[10] which are essential functions of any board.[11] For example, the act does not prevent board members from participating in question-and-answer sessions with other persons who are not public officials.[12]

{¶ 13} And the OMA does not prevent public officials from privately seeking and receiving advice from their legal counsel.[13] In *Theile v. Harris*, this court held that township trustees did not violate the OMA by meeting in private with the county prosecuting attorney, because the meeting with their legal advisor was "strictly of an investigative and information seeking nature" and did not involve deliberations of public business.[14]

---

5. R.C. 121.22(H).

6. *Berner v. Woods*, 9th Dist. No. 07CA009132, 2007-Ohio-6207, 2007 WL 4146645, ¶ 17.

7. R.C. 121.22(B)(2).

8. *Berner*, 2007-Ohio-6207, at ¶ 15, quoting *Holeski v. Lawrence* (1993), 85 Ohio App.3d 824, 830, 621 N.E.2d 802, citing *DeVere v. Miami Univ. Bd. of Trustees* (June 10, 1986), 12th Dist. No. CA85–05–065, 1986 WL 6763.

9. *Theile v. Harris* (June 11, 1986), 1st Dist. No. C–860103, 1986 WL 6514.

10. *Berner*, 2007-Ohio-6207, 2007 WL 4146645.

11. *Holeski v. Lawrence*, 85 Ohio App.3d at 829, 621 N.E.2d 802.

12. Id. at 830.

13. *Theile*.

14. Id.

{¶ 14} In this case, the trial court determined that the so-called "executive session," which was called during a public meeting, violated the OMA. But the timing of a public body's investigative or information-gathering session is not determinative of whether an OMA violation has occurred. In *Steingass Mechanical Contracting, Inc. v. Warrensville Hts. Bd. of Edn.*, the lowest bidder for two renovation projects sought to enjoin a school board from awarding the contracts to other companies.[15] The lowest bidder argued that the board had violated the OMA when, during a regular meeting and prior to its vote, it had gone into an executive session with its legal counsel.[16] The Ninth Appellate District held that the session did not violate the OMA because the board members had not engaged in deliberations with each other and had simply obtained "informational legal advice."[17] So even though the nonpublic information-gathering session had occurred during a regular meeting of the public body, no violation of the OMA had occurred because the session was not a meeting as that term is defined by the act.

{¶ 15} In this case, the undisputed evidence indicated that no deliberations had taken place and no decisions had been reached during the board's nonpublic information-gathering and investigative session. In the absence of deliberations or discussions by board members at the session, the session was not a "meeting" as defined by the OMA, so it was not required to occur in public. Consequently, the board did not violate the OMA by entering into the session.

{¶ 16} Because the Enquirer failed to meet its initial burden under Civ.R. 56, the trial court erred by entering summary judgment in its favor. Accordingly, we sustain the board's assignment of error and reverse the trial court's judgment. Moreover, because the undisputed evidence before the court indicated that no violation of the OMA had occurred, we enter judgment in favor of the board.

### Attorney Fees

{¶ 17} In its sole assignment of error, the Enquirer argues that the trial court erred by denying its motion for attorney fees. The OMA permits any person to bring an action to enforce it.[18] If the person proves a violation or a threatened violation of the act, "the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provi-

---

**15.** *Steingass Mechanical Contracting, Inc. v. Warrensville Hts. Bd. of Edn.*, 151 Ohio App.3d 321, 2003-Ohio-28, 784 N.E.2d 118.

**16.** Id. at ¶ 29.

**17.** Id. at ¶ 52.

**18.** R.C. 121.22(I)(1).

sions."[19] If the court issues an injunction, the court must order the public body to pay a civil forfeiture of $500 and must award to the prevailing party all court costs and reasonable attorney fees.[20] In its discretion, the court may reduce an award of attorney fees or refuse to award attorney fees if it makes certain findings.[21]

{¶ 18} In light of our holding that the court erred by finding that the board had violated the OMA, we further hold that the court erred by issuing an injunction and by awarding court costs to the Enquirer. The Enquirer was not entitled to attorney fees or costs because it failed to prove a violation or a threatened violation of the act. Accordingly, we overrule the Enquirer's assignment of error and affirm the trial court's denial of attorney fees.

### Conclusion

{¶ 19} In sum, in appeal No. C–100409, we reverse the trial court's judgment in favor of the Enquirer, as well as its award of court costs and civil forfeiture, and we enter final judgment in favor of the board. In appeal No. C–100404, we affirm the court's denial of attorney fees.

Judgment accordingly.

DINKELACKER, P.J., and FISCHER, J., concur.