[Cite as *State ex rel. Ames v. Brimfield Twp. Bd. of Trustees*, 2019-Ohio-5311.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. BRIAN M. AMES, | : | **O P I N I O N** |
| Relator-Appellant, | : | |
| | : | **CASE NO. 2019-P-0018** |
| - vs - | : | |
| BRIMFIELD TOWNSHIP BOARD OF TRUSTEES, | : | |
| | : | |
| Respondent-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2017 CV 00226.

Judgment: Affirmed in part and reversed in part; remanded.

*Brian M. Ames*, pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Relator-Appellant).

*James F. Mathews* and *Andrea K. Ziarko*, Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Respondent-Appellee).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Brian M. Ames ("Ames"), appeals from a decision rendered by the Portage County Court of Common Pleas granting summary judgment in favor of appellee, the Brimfield Township Board of Trustees ("the Board"). The trial court's judgment is affirmed in part and reversed in part.

{¶2} On March 6, 2017, Ames filed a pro se "Verified Complaint in Mandamus, Injunction, and Declaratory Judgment" against the Board, alleging 12 violations of R.C. 121.22, Ohio's Open Meetings Act ("OMA"). Ames' complaint alleges that, on specific

dates on which meetings were held, the Board entered executive sessions under circumstances not qualified as one of the exceptions contained in R.C. 121.22(G). Namely, the complaint alleges that the executive sessions were held to discuss pending litigation, but they were held without an attorney for the Board present. Therefore, Ames contends the sessions were not excepted by R.C. 121.22(G)(3). That section allows for an executive session for "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." Ames argues that his claims are supported by the meeting minutes of each meeting and by the admissions made by the Board during discovery that no attorney was physically present at the cited executive sessions.

{¶3} The Board filed an answer, denying it had violated any provisions of R.C. 121.22. Thereafter, Ames and the Board each filed a motion for summary judgment, asserting no genuine issue as to any material fact alleged in the complaint remained to be litigated. Both parties attached a copy of the meeting minutes and discovery responses to the motions for summary judgment. The Board also attached an affidavit from one of the trustees of the Board, Mike Kostensky, which stated the following:

> * * * 3. During the so-called "executive sessions" named in relator's complaint, the Board met with employees of the township, who conveyed information or general advice received from the township's attorney as to pending litigation or legal contracts, or spoke to the township's attorney on the telephone concerning pending litigation or other legal matters. The information received during these so-called "executive sessions" was confidential, attorney-client information, and was privileged.
>
> 4. On the dates set forth in relator's complaint, no discussions or deliberations as to public business were held outside the public meeting. * * *

2

{¶4} On February 13, 2019, the trial court issued a judgment entry granting the Board's motion for summary judgment and denying Ames' motion for summary judgment. The trial court held the following:

> The right of members of a public body to meet privately is not limited to the statutory exceptions listed above under R.C. 121.22(G). Even R.C. 121.22(A) itself, which generally states that public bodies are to take official action and conduct deliberation only in open meetings recognizes that this rule is subject to the limitation "unless . . . specifically excepted by law." The Code was not confined to "unless specifically excepted under subsection (G)." Thus, the "executive session" exceptions are neither all-inclusive nor exclusive. * * *
>
> I find that the conferences held on [each of the 12 dates in the complaint] by the Board with township employees, to relay information from the township's attorney, did not violate the OMA. The only evidence before this Court as to what transpired during those conferences was presented by Brimfield Township Trustee Mike Kostensky's affidavit, which set forth that the Board met with employees of the township, who conveyed information or general advice received from the township's attorney as to pending litigation or legal contracts, or spoke to the township's attorney on the telephone concerning pending litigation or other legal matters (I use the term "conferences" to avoid confusion, as "meeting" has a specific, relevant definition under the governing statute, which does not apply in this scenario.)
>
> Although referred to as "executive sessions" by the Board in its minutes, conferences between the Board and its attorney, or conferences to obtain information from the Board's attorney through an employee of the township, do not constitute "meetings" or "executive sessions" when no deliberations or official actions took place. I find that no deliberative processes took place, and that the information received was confidential, as established by Trustee Kostensky.
>
> There is a difference between obtaining information from a public body attorney and deliberation of public business. There is convincing evidence that each of these conferences were informational only, but no evidence that a majority of the Board discussed public business among themselves. As such, the evidence does not establish that simultaneous meetings and deliberations occurred. Therefore, I find these conferences fell outside the scope of the OMA.

3

{¶5} Ames filed a timely notice of appeal and raises five assignments of error for our review. For clarity and convenience, we initially combine and consider the following three assignments:

[1.] The Trial Court erred in evaluating whether particular gatherings of the Board constitute meetings.

[2.] The Trial Court erred in finding that although referred to as "executive sessions" by the Board in its minutes, conferences between the Board and its attorney, or conferences to obtain information from the Board's attorney through an employee of the township, do not constitute "meetings" or "executive sessions" when no deliberations or official actions took place.

[4.] The Trial Court erred by ruling that what the Board referred to as "executive sessions" in its minutes do not constitute "meetings" or "executive sessions."

{¶6} These three assignments of error relate to the trial court's conclusion that the executive sessions held by the Board, as documented in the meeting minutes, are not subject to the OMA because they were not meetings. The trial court initially held that the executive sessions did not violate the OMA but also held the executive sessions were not subject to the OMA because (1) the executive sessions were actually "conferences" rather than executive sessions, and (2) the "conferences" were not meetings.

{¶7} The parties disagree on the applicable standard of review where a mandamus action is decided on summary judgment. Ames advocates for a de novo standard of review for summary judgment rulings, and the Board advocates for an abuse of discretion standard of review for mandamus decisions.

{¶8} While the general rule is that the standard of review in a mandamus case is abuse of discretion, where the lower court grants summary judgment, this court reviews the decision de novo. *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-

4

4563, ¶17, citing *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, ¶8-9. This court has previously held, in accordance with the Ohio Supreme Court, that the appropriate standard of review for summary judgment on a mandamus action is de novo. *State ex rel. Brannon v. Lakeview School Bd. of Edn.*, 11th Dist. Trumbull No. 2015-T-0034, 2016-Ohio-1367, ¶8, citing *Manley*, *supra*, at ¶17. "Further, this case involves the interpretation of Ohio's Open Meeting Act. Our review of the trial court's construction of statutes involves questions of law, which we review de novo." *Radtke v. Chester Twp.*, 11th Dist. Geauga No. 2014-G-3222, 2015-Ohio-4016, ¶19, citing *Beaumont v. Kvaerner N. Am. Constr.*, 11th Dist. Trumbull No. 2013-T-0047, 2013-Ohio-5847, 2013 WL 6887969, ¶8.

{¶9} "Summary judgment is a procedural device intended to terminate litigation and to avoid trial when there is nothing to try." *Frano v. Red Robin Internatl., Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, ¶12 (11th Dist.), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358 (1992). Summary judgment is proper when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C).

{¶10} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). The moving party must point to some evidence of the type listed

5

in Civ.R. 56(C) (e.g., depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact) that affirmatively demonstrates there is no genuine issue of material fact. *Id.* at 292-293. Discrepancies are to be resolved in favor of the nonmoving party. Civ.R. 56(C).

{¶11} The purpose of Ohio's OMA "is to assure accountability of elected officials by prohibiting their secret deliberations on public issues." *State ex rel. Cincinnati Enquirer v. Hamilton Cty. Commrs.*, 1st Dist. Hamilton No. C-010605, 2002 WL 727023, *1 (Apr. 26, 2002) (citation omitted). The Act "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings, unless the subject matter is specifically excepted by law." R.C. 121.22(A).

{¶12} The trial court's conclusion that the executive sessions did not fall within the purview of the OMA resulted in summary judgment in favor of the Board.

{¶13} "In order for the OMA to apply, a public body must simultaneously (1) conduct a 'meeting' and (2) 'deliberate' concerning public business." *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 11th Dist. Portage No. 2017-P-0093, 2018-Ohio-2888, ¶20 (citation omitted). "'Meeting' is defined as 'any prearranged [1.] discussion of the public business of the public body [2.] by a majority of its members.'" *Id.* at ¶21, quoting R.C. 121.22(B)(2). "A public body deliberates "'by thoroughly discussing all of the factors involved [in a decision], carefully weighing the positive factors against the negative factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects th[e] legislative process.'"" *Id.*, quoting *Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703, ¶12

6

(1st Dist.), quoting *Theile v. Harris*, 1st Dist. Hamilton No. C-860103, 1986 WL 6514, *5 (June 11, 1986).

{¶14} Further, "deliberation" is defined as "the act of weighing and examining the reasons for and against a choice or measure" or "a discussion and consideration by a number of persons of the reasons for and against a measure." *Radtke*, *supra*, at ¶25, quoting *Webster's Third New International Dictionary* 596 (1961). "'Discussion' of the public business is an 'exchange of words, comments or ideas by the board.'" *Id.*, quoting *Holeski v. Lawrence*, 85 Ohio App.3d 824, 830 (11th Dist.1993) (emphasis deleted). "Thus, deliberation requires a member of a public body to discuss public business with another member of the same public body." *Id.* (citations omitted).

{¶15} "'[D]eliberations involve more than information-gathering, investigation, or fact-finding.'" *Ames*, *supra*, at ¶23, quoting *Berner v. Woods*, 9th Dist. Lorain No. 07CA009132, 2007-Ohio-6207, ¶15. "Information-gathering and fact-finding are essential functions of any board, but do not constitute deliberations that can serve as a basis for a violation of the [OMA]." *Id.* (citation omitted). "'Question and answer sessions between board members and other persons who are not public officials do not constitute "deliberations" unless a majority of the board members also entertain a discussion of public business with one another.'" *Id.*, quoting *Springfield Local School Dist. Bd. of Edn. v. Ohio Assn. of Pub. School Emps., Local 530*, 106 Ohio App.3d 855, 864 (9th Dist.1995).

{¶16} In the case sub judice, the trial court characterized the executive sessions held during the Board meetings as "conferences" and ultimately concluded that the OMA was not applicable. The reason for this semantical distinction by the trial court is the trial

7

court's contention that no deliberations took place during the executive sessions, according to the affidavit testimony of Trustee Kostensky. This affidavit, which the trial court relied on as "the only evidence of what transpired" during the non-public "conferences" conducted by the Board, is contradicted by evidence submitted by both parties—the meeting minutes—in several instances. For example, the March 18, 2015 minutes state that Trustee Kostensky moved to adjourn to executive session "to discuss Road Department Personal [sic] and pending litigation issues." Following the Board's return from executive session, the minutes cite several different motions that were proposed and voted on "[a]s a result of the executive session," directly contradicting Trustee Kostensky's sworn statement that "no discussions or deliberations as to public business were held outside the public meeting." Several of the motions cited in the minutes did not involve pending litigation, are not subject to any claim of privilege, and create an inference that discussions on public business were had outside of the public in the executive session, which resulted in action being taken. Meeting minutes on at least one other date are similarly contradictory.

{¶17} Also, an executive session may only be called during a regular or special meeting of the public body. "[T]he members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting * * *." R.C. 121.22(G). If a regular or special meeting of the public body is called, and the meeting minutes reflect the board has adjourned to executive session, it does not follow that the board is no longer in a meeting. The board remains in the regular or special meeting if it

8

has not adjourned. The executive session is just that–a session of the regular or special meeting that takes place in a non-public setting.

{¶18} The trial court's reliance on our holding in *Holeski v. Lawrence*, 85 Ohio App.3d 824 (11th Dist.1993) is misplaced. There, we held that a meeting did not occur where no deliberations took place and no action was taken. The facts of that case are distinguishable from those at hand.

{¶19} During the meeting in *Holeski*, a committee member submitted a report to the board, which purported to be a product of an ad hoc committee but was actually plagiarized from a previous township report. *Id.* at 827. Immediately after the public meeting concluded, as the trustees were exiting the meeting room, the plagiarism was discovered. *Id.* One of the trustees summoned the press and another trustee, who was still in the public meeting room, to the trustees' office. The committee member had already left the building. *Id.* Following an examination of the plagiarism in the trustees' office without the committee member, the board made comments to the press. *Id.* In that matter, we held that "in order to show a violation of the 'open meeting' rule as appellant attempts to do here, either a resolution, rule or formal action of some kind must have been adopted by the public body at a meeting not open to the public." *Id.* at 829.

{¶20} As discussed above, in the matter sub judice the meeting minutes on multiple occasions indicate that formal actions were taken as a result of the executive sessions conducted outside of the public. Unlike in *Holeski*, there is evidence presented by Ames—the meeting minutes—demonstrating that more than just mere discussions took place. Because of this, *Holeski* is inapplicable to the issues presented herein.

9

{¶21} Therefore, the trial court erred in its determination that the executive sessions were "conferences," rather than meetings, and that the OMA did not apply. The evidence submitted by the parties demonstrates that, on multiple occasions where Ames has alleged a violation of the OMA, meetings were held in private in which deliberations regarding public business were had and actions were taken as a result.

{¶22} Ames' first, second, and fourth assignments of error have merit.

{¶23} Ames' third assignment of error states:

[3.] The Trial Court erred in finding that The right of members of a public body to meet privately is not limited to the statutory exceptions listed[] under RC. 121.22(G).

{¶24} The trial court concluded that, in addition to the exceptions contained in R.C. 121.22(G), common law attorney-client privilege applied to the 12 instances of executive sessions cited in the complaint.

{¶25} The trial court relies on several cases involving disclosures of documents that were subject to attorney-client privilege in specific instances. However, the complaint filed by Ames does not seek disclosure of any privileged documents or information. Further, we do not need to look outside of the statute itself to find exceptions for attorney-board communications. R.C. 121.22(G)(3) provides an exception for "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action[.]" Also, R.C. 121.22(G)(5) provides an exception for "[m]atters required to be kept confidential by federal law or regulations or state statutes" such as records exempted from Ohio's Public Records Act, sealed records of criminal convictions, information concerning an abortion without parental consent, and results of HIV testing. *See Cincinnati Enquirer*, 2002 WL 727023, at *5.

{¶26} The Twelfth Appellate District addressed the latter exception, with regard to attorney-client privilege, as follows:

> R.C. 121.22(G)(5) allows a public body to convene an executive session to discuss "[m]atters required to be kept confidential by federal law or regulations or state statutes[.]" On appeal, as it did below, the Board argues that the July 23, 2009 executive session fell under R.C. 121.22(G)(5) because the Board was discussing matters with its statutory counsel and such discussions are protected by the attorney-client privilege which is codified in a state statute (R.C. 2317.02). The trial court rejected the Board's argument, finding that R.C. 121.22(G)(5) did not apply to either executive session merely because the Board was conferring with or discussed matters with its legal counsel during the executive sessions.
>
> * * * Addressing a similar argument, the First Appellate District held that: "R.C. 121.22(G)(5) refers to matters that are 'required' to be kept confidential. The commissioners, however, are under no legal duty to assert the attorney-client privilege to keep confidential every discussion that they may have with the prosecuting attorney. * * *"

*State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 12th Dist. Clermont Nos. CA2011-05-045 & CA2011-06-047, 2012-Ohio-2569, ¶76-77, quoting *Cincinnati Enquirer*, 2002 WL 727023, at *5. The First District went on to affirmatively state that "'the General Assembly, in limiting the circumstances in which such a discussion can be held in executive session, has *required a partial waiver of the privilege* by the client-public body.'" *Cincinnati Enquirer*, 2002 WL 727023, at *5 (emphasis added) (quotation omitted).

{¶27} We agree with the First and Twelfth Appellate Districts' analysis. R.C. 121.22(G) lists the matters a public body may consider privately in an executive session, including matters of imminent or pending litigation when discussed with the public body's counsel, R.C. 121.22(G)(3), and matters required to be kept confidential by state or federal law, R.C. 121.22(G)(5). These exceptions embody the attorney-client privilege

11

with regard to public bodies under the OMA. The General Assembly limited the circumstances in which such a discussion can be held in executive session, thus requiring a partial waiver of the privilege outside of R.C. 121.22(G). To hold otherwise would render meaningless the specific exception set forth in R.C. 121.22(G)(3). Therefore, the trial court erred when it applied a separate, common law privilege to the Board's communications outside of the exceptions contained in R.C. 121.22(G).

{¶28} Ames' third assignment of error has merit.

{¶29} Ames' fifth assignment of error states:

> [5.] The Trial Court erred by overruling Ames's motion for summary judgment and granting the Board's.

{¶30} "While summary judgment is a beneficial procedure aiding in the swift administration of justice, it must also 'be used cautiously and with the utmost care so that a litigant's right to a trial * * * is not usurped in the presence of conflicting facts and inferences.'" *Fifth Third Mtge. Co. v. Perry*, 4th Dist. Pickaway No. 12CA13, 2013-Ohio-3308, ¶35, quoting *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 15 (6th Dist.1983).

{¶31} The exceptions to the public meeting requirement are contained in R.C. 121.22(G), which states, "the members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters [enumerated in (G)(1)–(8)]." R.C. 121.22(G). None of the specific, enumerated exceptions are stated in the meeting minutes of the 12 meetings.

{¶32} Ames requested summary judgment on his 12 claims requiring the Board to comply with the provisions of the OMA. However, when construing the evidence

12

submitted with his motion for summary judgment in a light most favorable to the non-moving party—the meeting minutes and discovery responses—Ames did not meet his burden to demonstrate the absence of a genuine issue of material fact with regard to these meetings. While the meeting minutes fail in specificity to affirmatively confirm that the OMA was not violated by the Board, the minutes alone are inadequate to prove that a violation of the OMA has occurred in each of the instances cited in the complaint, and the discovery responses only concede that an attorney was not physically present at the meetings. There is no requirement, and Ames has not provided any authority, that the attorney must be physically present to allow the exception. To the contrary, the affidavit submitted by the Board indicated that communication with counsel during the 12 meetings may have been by telephone, which would qualify as a R.C. 121.22(G)(3) exception for "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action[.]" Therefore, the trial court was correct in denying Ames' motion for summary judgment.

{¶33} With regard to the Board's motion for summary judgment, the meeting minutes and affidavit submitted contradict each other. When construing this evidence in a light most favorable to the nonmoving party, there remains a genuine issue of material fact. As discussed above, the affidavit testimony that "no discussions or deliberations as to public business were held outside the public meeting" is contradicted by the meeting minutes in multiple instances, creating a genuine dispute of material fact. Therefore, summary judgment in favor of the Board was in error.

{¶34} Ames' fifth assignment of error is without merit regarding his motion for summary judgment and with merit regarding the Board's motion for summary judgment.

13

Upon review, a factual dispute remains to be litigated on the issue of whether the Board violated Ohio's OMA by conducting an executive session without an authorized purpose under R.C. 121.22(G) during the cited meetings.

{¶35} The judgment of the Portage County Court of Common Pleas denying summary judgment in favor of Ames is affirmed, and the judgment granting summary judgment in favor of the Board is reversed. The matter is remanded for further proceedings consistent with this opinion.

THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.