[Cite as *Paridon v. Trumbull Cty. Children Servs. Bd.*, 2013-Ohio-881.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| PATRICIA PARIDON, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2012-T-0035** |
| TRUMBULL COUNTY CHILDRENS SERVICES BOARD, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2011 CV 02362.

Judgment: Affirmed.

*David L. Engler,* 100 DeBartolo Place, #315, Boardman, OH 44512 (For Plaintiffs-Appellants).

*William L. Hawley,* Harrington, Hoppe & Mitchell, Ltd., 108 Main Avenue, S.W., #500, P.O. Box 1510, Warren, OH 44482-1510, and *William J. Meola,* Davis & Young, L.P.A., 972 Youngstown-Kingsville Road, P.O. Box 740, Vienna, OH 44473-8618 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Patricia Paridon, et al., appeal the judgment of the Trumbull County Court of Common Pleas, denying their request for an injunction. At issue is whether appellee, Trumbull County Children Services Board ("the board"), may require attendees of its public meetings to sign in before being admitted to such meetings. For the reasons that follow, we affirm.

{¶2} On October 20, 2011, appellants filed a complaint for injunction alleging that, just two days earlier, on October 18, 2011, they attended a public meeting of the board, but that they were not permitted to enter the meeting unless they signed a sign-in sheet, pursuant to the board's sign-in procedure. Appellants alleged that the board's rule violated Ohio's Sunshine Law, R.C. 121.22, and demanded an injunction to prevent the board from requiring them to sign in before attending the board's meetings, a civil forfeiture of $500 for each person denied access, and attorney fees. The board filed an answer, denying the material allegations of the complaint.

{¶3} The matter proceeded to trial on appellants' complaint. Nicholas Kerosky, Executive Director of the Trumbull County Children Services Board, testified on cross-examination that the board has a written policy, which prohibits members of the public from entering the board's building unless they sign in and state the nature of their visit. The written policy, which was admitted in evidence, provides that these security measures are necessary due to the "sometimes volatile nature of child welfare."

{¶4} Mr. Kerosky testified that this written policy applies whether the person is visiting the board's facility during the board's usual business hours to conduct business or in the evening to attend the board's meetings.

{¶5} Mr. Kerosky testified the purpose of this policy is to protect the children in the care and custody of the board, who reside in the board's facility, and also to protect the confidential records maintained there by the board.

{¶6} Mr. Kerosky said the board does not verify the name of those persons who sign in by requiring them to produce their driver's license or other form of identification. Nor does the board perform any check on these individuals, such as a criminal history

2

check.  Thus, any member of the public is permitted to attend a meeting of the board by simply signing in.

{¶7}    The board's meetings are held in the board's facility on Reeves Road in Warren, Ohio.  Most of the meetings are held in the training room.  The October 18, 2011 meeting, which gave rise to this lawsuit, was held in the gym because attendance was expected to be higher than usual.  Children in the care and custody of the board reside in the board's facility.  The area in which they reside can be accessed from various areas in the building, including the gym.

{¶8}    Mr. Kerosky testified that he has directed Mark Massucci, a board investigator who provides security at the board's meetings, to deny admission to anyone who refuses to sign in.

{¶9}    Susan Pisegna, a resident of Warren who is not a party to this action, testified for appellants that she went to the board's meeting in November 2011.  She said she was asked to sign in.  She said, "they asked us to sign in so I did not go in." She said that when she attended the December 20, 2011 meeting, she was asked to sign in before entering the meeting.  She did not sign her true name.  Instead, she scribbled the fictitious name, "Suzie Homemaker," which was illegible, and was allowed into the meeting.

{¶10} Appellant, Patricia Paridon, testified she was asked to sign in for the board's October 18, 2011 meeting.  She refused and caused a disturbance when Mr. Massucci told her she could not attend the meeting if she refused to sign in.  She still tried to enter the meeting without signing in.  She said Mr. Massucci threatened to arrest her if she went in the meeting without signing in.  He called 911 and officers from the Warren Police Department arrived, but she was not arrested.  Contrary to appellants'

3

argument, the record does not show they were ever asked by the board their reason for attending this or any other meeting of the board.

**{¶11}** Following the trial, both parties submitted trial briefs. On March 28, 2012, the court entered judgment, dated March 28, 2012, denying appellants' request for an injunction. The court stated the issue presented was whether the board has the right to require persons wishing to attend a board meeting to sign a sign-in sheet prior to being admitted to the meeting. The court found that the security of the children in the facility would be compromised by not requiring everyone attending the board's meetings to sign in. The court also found that the board was authorized to require attendees at its meetings to sign in and that appellants failed to prove by clear and convincing evidence that they were entitled to an injunction.

**{¶12}** Appellants appeal the trial court's judgment, asserting the following for their sole assignment of error:

**{¶13}** "The trial court erred in its finding that respondent-appellee did not violate Ohio open meeting law when it permitted a 'sign-in' sheet."

**{¶14}** Appellants argue that, pursuant to R.C. 121.22, they have an absolute, unfettered right to attend public meetings. They argue that the board is not entitled to impose any condition on their right to be admitted to those meetings. Specifically, they argue the board's requirement that those who attend its meetings sign their name to a sign-in sheet constitutes a denial of admission. We note that R.C. 121.22 does not prevent a public agency from requiring those wishing to attend its public meetings to sign a sign-in sheet before attending.

**{¶15}** While the parties agree there is no case law authority addressing the exact issue before us, we note that appellants cite no pertinent case law, which

4

supports, even by analogy, their argument that a public body may not require members of the public to sign in before attending its meetings.

**{¶16}** R.C. 121.22, popularly known as the "Sunshine Law," imposes open meeting requirements on public bodies. R.C. 121.22(A) provides that this statute is to be "liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings, unless the subject matter is specifically excepted by law." R.C. 121.22(C) also provides that "all meetings of any public body are declared to be public meetings open to the public at all times." It is undisputed that the board is a public body; that the October 18, 2011 meeting at issue did not fit any of the exceptions to the Sunshine Law pursuant to R.C. 121.22(G); and that this meeting was required to be open to the public.

**{¶17}** R.C. 121.22(I)(1) provides that "[a]ny person may bring an action to enforce this section. * * * Upon proof of a violation or threatened violation of this section in an action brought by any person, the court of common pleas shall issue an injunction to compel the members of the public body to comply with its provisions." Upon proof of a violation or threatened violation of the Sunshine Law, irreparable harm and prejudice shall be "conclusively and irrebuttably presumed." R.C. 121.22(I)(3). Upon proof of a violation, the court of common pleas is required to issue an injunction. *Fayette Volunteer Fire Dept. No. 2, Inc. v. Fayette Twp. Bd. of Twp. Trustees*, 87 Ohio App.3d 51, 54 (4th Dist.1993).

**{¶18}** This court has held that the plaintiff's burden of proof for seeking an injunction in the context of an alleged Sunshine Law violation is clear and convincing evidence. *Holeski v. Lawrence*, 85 Ohio App.3d 824, 828 (11th Dist.1993). The decision to grant an injunction rests in the sound discretion of the trial court. *See*

5

*Garono v. Ohio*, 37 Ohio St.3d 171, 173 (1988). Appellate courts review this decision under an "abuse of discretion standard." However, where the appellant argues that the trial court erred in making a factual determination, rather than a discretionary decision, we must apply a "weight of the evidence" standard, rather than an "abuse of discretion" standard. *Myers v. Wild Wilderness Raceway*, 181 Ohio App.3d 221, 2009-Ohio-874, ¶13, fn. 5 (4th Dist.). Under the civil manifest weight standard, the trial court's judgment will not be disturbed if it is supported by some competent, credible evidence. *State v. Reeves*, 11th Dist. No. 2006-T-0099, 2007-Ohio-4765, ¶13.

{¶19} As noted above, the board has a written policy requiring anyone visiting the board's facility to sign in. According to the undisputed testimony of the board's Executive Director, Nicholas Kerosky, under the board's written policy, anyone entering the board's facility, whether to conduct business during the day or to attend a board meeting in the evening, must sign in. This policy was adopted as a security measure to protect the children in the board's care residing at the board's facility and also to protect the confidential records maintained there regarding such children.

{¶20} Appellants argue the board has not always required members of the public to sign in before attending a meeting because Paridon testified that on one occasion, in August 2011, she was not required to sign in. Appellants also argue that the board did not require citizens to sign in prior to this controversy. Appellants do not reference the record in support of this argument, and our review of the transcript does not support it. There is thus no evidence that, prior to this controversy, the board did not have a sign-in policy. Moreover, contrary to this argument, Mr. Kerosky testified that the board's sign-in procedure has been in effect "for many, many years" without challenge.

{¶21} Next, appellants argue that *any* condition imposed on the admission to a public meeting is null and void. They argue that because there is no sign-in requirement in the Sunshine Law, the board lacked authority to impose such a requirement. We do not agree.

{¶22} A meeting of government officials, when opened to the public, is a limited public forum for discussion of subjects relating to the duties of those officials. *Dayton v. Esrati*, 125 Ohio App.3d 60, 73 (2d Dist.1997), citing *Madison Joint Sch. Dist. v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175 (1976). The public body may place limitations on the time, place and manner of access to its meetings, as long as the restrictions are content-neutral and narrowly tailored to serve a significant governmental interest. *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44-46 (1983); *Hansen v. Westerville City School District*, 1994 U.S. App. LEXIS 31576 (6th Cir.1994). In *Hansen*, the Sixth Circuit held the board's policy limiting the overall length of public participation at a public meeting, the number of speakers, and the duration of their comments, and giving preference to speakers who had not spoken at a previous board meeting was a permissible content-neutral restriction on the time, manner, and place of the plaintiffs' speech. *Id*. at *31.

{¶23} Appellants do not dispute that the protection of the children in the board's care and custody is a significant governmental interest. We note that the board is charged with the protection of children in its care. *See* R.C. 5153.16. Moreover, R.C. 2744.01(C)(2)(o), the political subdivision immunity statute, expressly provides that the operation of a children's agency is a governmental function.

{¶24} However, appellants argue that if the board is truly interested in protecting the children, they should move the meetings to another facility where children are not

7

present. While R.C. 121.22 does not state where a public body must hold its public meetings, it has been held that the public body must use a public meeting place. *Wyse v. Rupp*, 6th Dist. No. F-94-19, 1995 Ohio App. LEXIS 4008 (Sep. 15, 1995), *12. Appellants have failed to reference any authority that addresses the issue of what the public body must do if its general meeting place presents a risk to the security of its residents. Because R.C. 121.22 is silent on this issue, we must conclude that the legislature has left the matter to the discretion of the public body. *Id.* at *12-*13, citing *State ex rel. Hunt v. Hildebrant*, 93 Ohio St. 1, 11-12 (1915). Thus, the board has the discretion to determine where its public meetings will be held. It is not required to hold its meetings off-site because it also has an interest in ensuring the security of its children and confidential records. Instead, the board exercised its discretion to require members of the public wishing to enter its facility to sign in as a security measure. In upholding this policy, we cannot say that the trial court abused its discretion.

{¶25} Next, appellants do not dispute that the sign-in requirement is content-neutral. There is no evidence that this policy was aimed at certain groups or persons holding certain views. To the contrary, everyone seeking to enter the board's facility is required to sign in.

{¶26} Further, the board's sign-in requirement is narrowly tailored to serve the board's interest in protecting the children and the board's confidential records. In light of the board's significant interest in providing for the care and custody of the children, it is difficult to imagine a less intrusive requirement than simply requiring members of the public who wish to attend a board meeting to sign his or her name. As noted above, the board does not verify the signature or investigate the citizen. It merely requires him or her to sign his or her name. As long as the person identifies himself or herself, he or she

8

can enter the building, attend the board's meetings, and express any views or opinions he or she chooses.

{¶27} Appellants argue the board's reason for the sign-in requirement, i.e., the security of its children and confidential records, is pretextual because the board does not check the signatures of those signing in. However, Mr. Kerosky testified it would not be feasible for the board to verify the signatures and run record checks on every person attending the board's meetings. Appellants argue that because the board does not check the signatures, the board is not really interested in the attendees' names, and that the real purpose of the sign-in requirement is to count the number of attendees. They argue this can better be accomplished by simply placing a counting machine at the door to count the number of people entering the building. However, just because the board cannot feasibly verify the accuracy of the names of all attendees or run criminal record checks on them does not mean the board does not have a legitimate interest in retaining records of the attendees. This is particularly true if they are involved in an incident requiring investigation. While appellants may not agree with the policy decisions made by the board to protect the children in its charge, the board has the discretion to make these choices. It is worth noting that the sign-in policy applies to anyone wishing to enter the board's facility for any purpose, not only to attend a board meeting, further evidencing that the purpose of the board's policy is to promote security, not to interfere with the public's right to attend its meetings.

{¶28} Appellants' reliance on *State ex rel. Randles v. Hill*, 66 Ohio St.3d 32 (1993) is misplaced because in that case the public body locked the door to the room in which the public meeting was taking place and actually excluded the public from a

9

meeting. In contrast, here, the board took no action to exclude members of the public from any public meeting.

{¶29} Appellant argues that because the Public Records Law, R.C. 149.43, does not require a person requesting public records to disclose his identity, the board's sign-in requirement violates the Sunshine Law. However, while the Public Records Law and the Sunshine Law are both aimed at promoting openness in government, they are separate and distinct in several respects. Three examples follow. First, while the Public Records Law provides that no public office may condition the availability of public records on disclosure of the requester's identity, R.C. 149.43(B)(5), the Sunshine Law has no such provision. If the General Assembly wanted to include an anonymity requirement in the Sunshine Law, as it did in the Public Records Law, it could easily have done so. Second, as noted above, it is well settled that governmental agencies can place limitations on the time, place, and manner of access to their meetings, as long as the restrictions are content-neutral and narrowly tailored to serve a significant governmental interest. Third, public records requests can be made and responded to by the public agency via the mail, e-mail, or facsimile transmission, significantly reducing the likelihood of any disturbances. In contrast, the Sunshine Law contemplates the attendance of citizens at a public meeting. It is well known that discussion at such meetings can become heated, as often happens when the issues under discussion are controversial, increasing the likelihood of disruptive incidents. Thus, at public meetings, the need to provide security measures is greater than with a public records request. In light of the foregoing differences between the Public Records Law and the Sunshine Law, the anonymity requirement of the Public Records Law does not apply to the Sunshine Law.

{¶30} The record before us supports the finding that the board's sign-in policy is content-neutral and narrowly tailored to serve the board's significant interest in providing for the security of the children in its care and custody who reside in the board's facility. The record further supports the court's finding that appellants failed to prove by clear and convincing evidence that the board's sign-in policy violated their right to attend the board's public meeting on October 18, 2011. The board's sign-in policy does not deny access by the public to the board's meetings. As the trial court noted, under this policy, citizens have the choice to either sign in and attend or not.

{¶31} We therefore hold the trial court's finding that the board's sign-in policy does not violate R.C. 121.22 and that appellants were not entitled to an injunction was supported by competent, credible evidence.

{¶32} For the reasons stated in this opinion, appellants' assignment of error is overruled. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

{¶33} I dissent from the majority's determination that the Trumbull County Children Services Board (TCCSB) did not violate R.C. 121.22, the Ohio Sunshine Law, by requiring those who wished to attend its public meetings to sign a sign-in sheet prior to being admitted. Since this sign-in requirement improperly creates a prohibition on an

individual's right to attend a public meeting anonymously, the appellants' request for an injunction should have been granted and the lower court's judgment should be reversed.

{¶34} Pursuant to R.C. 121.22(C), "[a]ll meetings of any public body are declared to be public meetings open to the public at all times." It further states that the law must be "liberally construed," and requires that official business and deliberations occur only in "open meetings," unless an exception applies. R.C. 121.22(A). The emphasis of this law is to promote the accountability of public officials and prohibit secret deliberations on public issues. *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 544, 668 N.E.2d 903 (1996). *See also Moraine v. Bd. of Cty. Commrs. of Montgomery Cty.*, 67 Ohio St.2d 139, 145, 423 N.E.2d 184 (1981) ("the intent of the Sunshine Law [is] that deliberations concerning public issues be made public").

{¶35} Pursuant to this law, it is important that individuals are free to attend public meetings without restrictions that impede their access and essentially render the meetings closed to the public. It must be emphasized that R.C. 121.22 does not state that access to public meetings may be restricted by requirements for admission, such as giving one's identity. As has been noted, "[t]he only defense available to the public body when public access is denied to a public meeting is that the meeting is statutorily excepted from the public meeting requirement," which is not the case in the present matter. *Specht v. Finnegan*, 149 Ohio App.3d 201, 2002-Ohio-4660, 776 N.E.2d 564, ¶ 35 (6th Dist.), citing *State ex rel. Randles v. Hill*, 66 Ohio St.3d 32, 35, 607 N.E.2d 458 (1993). It cannot be presumed that restrictions are allowable when the purpose of the statute is for meetings to be "open." Requiring individuals to sign in creates a situation in which the meeting is open to the public *only* if they are willing to reveal their identities.

**{¶36}** The United States Supreme Court has recognized the importance of anonymity, in the context of free speech. It has held that anonymity can be "assumed for the most constructive purposes," and that "there are times and circumstances when States may not compel members of groups engaged in the dissemination of ideas to be publicly identified." *Talley v. California*, 362 U.S. 60, 65, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960). It was further explained that "identification and fear of reprisal might deter perfectly peaceful discussions of public matters of importance." *Id.* In the present matter, similar anonymity concerns may be raised, in that individuals participating in a public meeting or observing the public discussion are compelled to identify themselves. This may bring fear of reprisals, which was testified to by appellant Paridon, who stated that she believed that TCCSB may retaliate based on her attendance at its meetings.

**{¶37}** Because of these concerns, requirements such as the one utilized in the present matter can have a chilling effect on individuals who may wish to attend public meetings. Under the majority's holding, R.C. 121.22's requirements that meetings must be open and public can be vitiated, as various regulations and requirements are placed on meeting attendance. This is totally inapposite to the statutory requirement that the open meetings provision be "liberally construed."

**{¶38}** It is also useful to compare R.C. 121.22 to R.C. 149.43, the Public Records statute, to demonstrate the necessity of anonymity at a public meeting. In that statute, the Legislature stated that "no public office or person responsible for public records may limit or condition the availability of public records by requiring disclosure of the requester's identity." R.C. 149.43(B)(4). It is unclear why, under the majority's interpretation of R.C. 121.22, an individual would be allowed to obtain records related to the activity of a public body and retain his or her anonymity, while an individual

13

attending a meeting would not be given the same right. Under this interpretation, an individual would be able to assert the right of anonymity to obtain the exact meeting minutes of a hearing which he could not attend anonymously. This, in effect, impedes individuals from exercising their right to attend public meetings and fails to comply with the requirement to construe R.C. 121.22 liberally. It is also noteworthy that the two statutes are closely related and are often considered together in determining the requirements for record keeping and providing information related to board meetings to the public. *State ex rel. ACLU of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 36 ("R.C. 121.22 and 149.43 are construed in pari materia for purposes of maintaining a record of the proceedings of public bodies and making minutes of those proceedings available to the public").

{¶39} It is argued by the appellee and the majority that the sign-in requirement is permissible because it was necessary to protect the safety of the children residing at TCCSB's facility where the meeting was held. There are multiple reasons, however, why creating such a restriction on freely attending public meetings at the board's facility is both unnecessary and is not narrowly tailored. First, the board could have simply moved its meeting to a different facility, one that did not pose any risks to children. This would not be overly burdensome, as it would only require the board to hold its meeting at any available location that could be safely open to the public. As was noted by the majority, there is no requirement that a hearing be held at a specific location or where the public body normally conducts its business. *Crist v. True*, 39 Ohio App.2d 11, 13, 314 N.E.2d 186 (12th Dist.1973) (R.C. 121.22 is "silent on the subject of the times and places" of public meetings, except for the requirement that public meetings "must be conducted only in a public meeting place"). If the board's purpose for adopting the sign-

14

in requirement was to protect children, this would be a better solution, since it would allow the children to be safe and also would not impede on the open meeting requirement.

{¶40} Second, the sign-in requirement fails to serve the asserted "significant governmental interest." The testimony presented revealed that there was no requirement to sign in with an individual's actual name and no verification of the identity of those attending occurred. It is unclear, then, what purpose is served by signing in or how it could serve any interest, including the protection of children. Therefore, this process is not only unduly restrictive of an individual's right to attend a public meeting but also fails to serve any meaningful purpose[1].

{¶41} Since the sign-in requirement used by TCCSB at its public meetings is in violation of R.C. 121.22's requirement that a public body's meetings be "open" to the public, I respectfully dissent from the majority's decision and would reverse the decision of the trial court.

---

1. To the extent it may be implied that someone attending the meeting sign in under a false name, such conduct has criminal connotations.