[Cite as *State ex rel. Ames v. Portage Cty. Bd. of Commr.*, 2018-Ohio-2888.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO ex rel. BRIAN AMES, | : | **O P I N I O N** |
| Relator-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-P-0093** |
| PORTAGE COUNTY BOARD OF COMMISSIONERS, et al., | : | |
| | : | |
| Respondents-Appellees. | : | |
| | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2015 CV 00872.

Judgment: Affirmed.


*Victor V. Vigluicci,* Portage County Prosecutor, and *Denise L. Smith,* Chief Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Respondents-Appellees).

*Warner D. Mendenhall,* The Law Offices of Warner Mendenhall, 190 North Union Street, Suite 201, Akron, OH 44304 (For Appellant-Relator).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Brian Ames, appeals from the judgment of the Portage County Court of Common Pleas, entering judgment, after a trial to the bench, in favor of appellees, Portage County Board of Commissioners, et al. At issue is whether the trial court erred in concluding Ohio's Open Meetings Act ("OMA") did not apply to four meetings in which appellees convened with a group designated the Jail Overcrowding

Task Force ("JOTF"), and one meeting with the Portage County Tea Party ("PCTP") to receive input regarding the county's jail overcrowding problem, the opiate epidemic, as well as potential solutions for these problems. We affirm.

{¶2} On October 30, 2015, appellant filed his complaint alleging the Portage County Board of Commissioners ("Board"), on multiple occasions, violated Ohio's OMA. Count one alleged the Board failed to establish a reasonable method by which any person may determine the time and place of certain meetings. Count two alleged the Board failed to keep minutes of meetings on the following dates: June 16, 2015; June 20, 2015; July 14, 2015; July 28, 2015; and August 7, 2015; and count three alleged the one-quarter percent sales and use tax increase passed by the Board should be invalidated. The trial court granted summary judgment in appellees' favor on counts one and three. Because, however, the court deemed there were genuine issues of material fact to be litigated on count two, that claim was tried to the bench.

{¶3} At trial, the parties jointly stipulated to the following: (1) a meeting was pre-arranged and held at the Portage County Administration Building at 7:30 a.m. eastern standard time on June 16, 2015; (2) Three Board members and Portage County officers attended the June 16, 2015 meeting at the Portage County Administration Building; (3) a meeting of the Jail Overcrowding Task Force ("JOTF") was pre-arranged and held at the Portage County Administration Building on June 30, 2015; (4) Meetings of the JOTF were pre-arranged and held at the Portage County Administration Building at 7:30 a.m. on July 14, 2015 and July 28, 2015; (5) two Board members attended the JOTF meeting on June 30, 2015, July 14, 2015, and July 28, 2015; (6) A meeting was pre-arranged and held at the Portage County Justice Center on August 7, 2015; (7) The Board

members and members of the Portage County Tea Party ("PCTP") attended the August 7, 2015 meeting; (8) There are no minutes for any of the meetings specified; and (9) There was no notice provided to the public of the meetings' time and place.

{¶4} The JOTF was made up of volunteers to provide the Board with input from the community regarding the opioid epidemic that was profoundly affecting the County.[1] Dr. Dean Deperro, Portage County Coroner, testified that in the past five years, drug-related deaths had increased from five in 2011, to 47 in 2016; he further observed that, at the time of the hearing, "we're on track to beat that for [2017]." Moreover, the increase in drug use had created an increase in criminal activity which, in turn, has led to a greater volume of arrests and incarcerations. As a result, the Portage County Jail was overcrowded and overburdened.

{¶5} On June 30, July 14, and June 28, the JOTF, made up of treatment providers, Portage County employees, general members of the community, and people in the community who had been affected by the opioid problem, convened to offer their opinions on possible avenues the Board might take to help ameliorate the drug epidemic and overcrowding issues. The JOTF was not vested with any authority to render decisions or create policy. And the members did not convene to take action on any specific measure. Moreover, there was no evidence that the Board members who attended directed the meetings or engaged in specific discourse with one another or

---

1. The members who testified were Robert Christopher Mosher, owner of a towing company; Sue Whitehurst, CEO of Townhall II, a private drug and alcohol treatment service; Todd Peetz, a city planner for the Portage County Regional Planning Commission; Frank Hairston, Director of the Portage Area Regional Transport Authority; Mark Frisone, Executive Director of Family and Community Services, a private social service agency; Michael Anthony Marozzi, Portage County Engineer; Joel Mowey, Executive Director of the Mental Health and Recovery Board of Portage County; Brad Cromes, Portage County Treasurer; William G. Steiner, II, Director of the Portage County Solid Waste Management District; and Todd Bragg, Director of Budget and Financial Management of the Portage County Commissioners.

any of the JOTF members. According to testimony, the Board members were essentially listening to the community members give voice to their concerns.

{¶6} All members of the JOTF who testified at trial stated their role was to provide the Board with their personal opinions and perspectives on the opioid epidemic. In light of the members' feedback and the nature of the problems on which they were asked to opine, members additionally offered their views on how to address the problems, e.g., funding treatment problems and a jail expansion through a possible sales tax. And, although they were asked to provide such feedback, the JOTF was not delegated any specific or formal "task" to accomplish. The JOTF's role could best be described as informational, as it provided the Board with a focus group to gauge the community's understanding of the problems as well as the members' perspectives on potential solutions to the same.

{¶7} On August 7, 2015, the Board held a pre-arranged meeting with various members of the PCTP at the Portage County Justice Center. Testimony indicated the meeting was convened to alert PCTP officials of the gravity of the opioid epidemic and the attending problem of jail overcrowding. The PCTP members provided some input on how the Board might effectively communicate the severity of these issues to the community. The meeting was ostensibly organized to obtain the PCTP's support if the Board deemed a tax increase necessary. The meeting concluded with a tour of the jail. At trial, four of the PCTP members who attended the meeting testified.[2] To the extent these individuals could recall details from the meeting, they were consistent in their opinion that it was informational in nature and designed to inform them of the need to

_____

2. Tom Zawistowski, Executive Director of the PCTP; Carl Crawford, treasurer of the PCTP; Anne Kaczmarek, secretary of the PCTP; and Patricia Stephens, vice president of the PCTP.

4

improve the jail due to conditions surrounding the opioid problem. And to obtain the PCTP's opinion on a potential tax levy. Similar to the testimony from the members of the JOTF, no decisions were made during the August 7, 2015 meeting.

{¶8} One Board member, Commissioner Vicki Kline, testified she attended two of the subject meetings. She stated the JOTF was created for "informational purposes" and to obtain community feedback relating to the opioid and jail-overcrowding problems. Commissioner Kline testified the Board pondered placing a tax measure designed to fund solutions to the problems on the next ballot; they concluded, however, it would not pass. Pursuant to statute, the Board held a public hearing and approved a resolution which passed a tax levy. The resolution was submitted to the Ohio Tax Commissioner who concluded Portage County had maxed out its capacity to utilize this tax medium. As a result, the Board rescinded the measure. Later, after a public hearing, the Board approved a different resolution and was able to pass a levy that, as of the hearing date, remained in place. Commissioner Kline acknowledged the Board's minutes, which enabled the assembly of the JOTF, stated its purpose was to help pass a sales and use tax. She testified the JOTF could not pass the tax and the Board, by convening the JOTF, desired to obtain input from people in the community on the problems and their opinions on potential solutions, one of which was the potential implementation of a sales and use tax.

{¶9} After receiving the evidence, the trial court entered judgment on behalf of appellees. The court concluded that, even though the JOTF was designated a "task force," it was not vested with any authority to make decisions or engage in any official actions. The court emphasized the JOTF was an "eclectic gathering of individuals with

5

diverse reasons for attending the various meetings." And there was no evidence the JOTF, along with the Board, met to "deliberate" or author any binding resolutions. Moreover, the trial court determined the Board's August 7, 2015 meeting with PCTP officials was purely informational and designed to seek the PCTP's support in the event the Board pursued a tax increase. The court found no decisions nor deliberation occurred during this meeting. The trial court accordingly concluded the Board did not violate the OMA. This appeal follows.

{¶10} Appellant assigns two errors for our review. Each assignment of error essentially challenges the weight of the evidence supporting the trial court's judgment. Weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Citations omitted.) (Emphasis deleted.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶12. In a civil case, "'[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" (Citation omitted.) *Meeker R & D, Inc. v. Evenflo Co.,* 11th Dist. Portage Nos. 2014-P-0060 and 2015-P-0017, 2016-Ohio-2688, ¶40, citing *Pelmar USA, LLC v. Mach. Exch. Corp.,* 9th Dist. Summit No. 25947, 2012-Ohio-3787, ¶10.

{¶11} Appellant's assignments of error provide:

{¶12} "[1.] The trial court erred in ruling the Jail Overcrowding Task Force Committee was not a subcommittee of the Portage County Board of Commissioners under the definition of R.C. 121.22(B)(1)(b).

6

{¶13} "[2.] The trial court erred in ruling a majority of Portage County Commissioners did not deliberate over public business at the August 7, 2015 Tea Party Meeting."

{¶14} We first point out that appellees contend that the relief appellant seeks is the invalidation of the previously rescinded measure. Because the measure is no longer in place, they maintain the remedy, and this appeal, are moot. Appellant, however, did not only seek invalidation of the measure. He also sought $500 civil forfeiture, pursuant to statute, for each alleged violation of the OMA. Thus, the arguments asserted on appeal are not moot.

{¶15} Because they are analytically similar, we shall address appellant's assigned errors together. Under his first assignment of error, appellant argues the trial court erred in finding the JOTF was not a subcommittee of the Board and further erred in concluding the JOTF did not engage in "deliberations." Appellant maintains the JOTF was a subcommittee of the Board and deliberated, as contemplated by the OMA. Thus, he concludes, the Board acted in violation of the OMA by failing to maintain minutes of the meetings at issue.

{¶16} Under his second assignment of error, appellant similarly argues the trial court erred when it concluded the meeting with the PCTP was not subject to the OMA. Appellant maintains a majority of the Board deliberated over public business, viz., the pros and cons of a tax increase, during the August 7, 2015 meeting with the PCTP. Thus, appellant concludes, the Board violated the OMA during that meeting.

{¶17} R.C. 121.22, Ohio's OPA, more commonly known as the "Sunshine Law," imposes open meeting requirements on public bodies. *Paridon v. Trumbull County*

*Childrens Services Board,* 11th Dist. Trumbull No. 2012-T-0035, 2013-Ohio-881, ¶16. R.C. 121.22(A) requires that governmental bodies "take official action and * * * conduct all deliberations upon official business only in open meetings * * *." R.C. 121.22(C) provides: "All meetings of any public body are declared to be public meetings open to the public at all times."

{¶18} The statute defines "public body" as "any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any * * * township * * * or other political subdivision * * *." R.C. 121.22(B)(1)(a). "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body." R.C. 121.22(H).

{¶19} "The intent of the Sunshine Law is to require governmental bodies to deliberate public issues in public." *Berner v. Woods,* 9th Dist. Lorain No. 07CA009132, 2007-Ohio-6207, ¶15, citing *Moraine v. Montgomery Cty. Bd. of Commrs.,* 67 Ohio St.2d 139, 145 (1981). "A violation of the open-meeting requirement, or of the notice provision, is a predicate to invalidation of any legislative action." *Springfield Local Sch. Dist. Bd. of Educ. v. Ohio Ass'n of Public School Employees, Local 530,* 106 Ohio App.3d 855, 863 (9th Dist.1995).

{¶20} In order for the OMA to apply, a public body must simultaneously (1) conduct a "meeting" and (2) "deliberate" concerning public business. *Wilkins v. Village of Harrisburg,* 10th Dist. Franklin No. 12AP-1046, 2013-Ohio-2751, ¶12; *see also Holeski v. Lawrence,* 85 Ohio App.3d 824, 829-830 (11th Dist.1993).

8

{¶21} "Meeting" is defined as "any prearranged [1.] discussion of the public business of the public body [2.] by a majority of its members." (Emphasis added.) R.C. 121.22(B)(2).

{¶22} Further, in order for the OMA to apply, the public body must "deliberate" over public business at a meeting. *Berner, supra.* A public body deliberates "'by thoroughly discussing all of the factors involved [in a decision], carefully weighing the positive factors against the negative factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects th[e] legislative process.'" *Cincinnati Enquirer v. Cincinnati Bd. of Edn.,* 192 Ohio App.3d 566, 2011-Ohio-703, ¶12 (1st Dist.), quoting *Theile v. Harris,* 1st Dist. Hamilton No. C-860103, 1986 WL 6514 (June 11, 1986).

{¶23} "'[D]eliberations involve more than information-gathering, investigation, or fact-finding." *Berner, supra,* citing *Holeski, supra,* at 829. Information-gathering and fact-finding are essential functions of any board, but do not constitute deliberations that can serve as a basis for a violation of the Sunshine Law. *Holeski, supra.* "Question and answer sessions between board members and other persons who are not public officials do not constitute 'deliberations' unless a majority of the board members also entertain a discussion of public business with one another." *Springfield, supra,* at 864. "Discussion" of the public business is an "exchange of words, comments or ideas *by the board.*" (Emphasis sic.) *Holeski, supra,* at 830*,* citing *DeVere v. Miami Univ. Bd. of Trustees,* 12th Dist. Butler No. CA86-05-065, 1986 WL 6763 (June 10, 1986). Thus, "deliberation requires a member of a public body to discuss public business with

9

another member of the same public body." *Radtke v. Chester Twp.*, 11th Dist. Geauga No. 2014-G-3222, 2015-Ohio-4016, ¶12.

**{¶24}** The parties stipulated that the gatherings between the Board and the JOTF were pre-arranged meetings. And appellant first claims the trial court erred when it found the JOTF was not a subcommittee of the Board. We fail to see how this issue is dispositive of whether the Board violated the OMA. Even assuming the JOTF was a subcommittee of the Board, the factual question resolved by the trial court was whether the Board, during the meetings with the JOTF, "deliberated" on public business. The trial court answered this question in the negative. We agree with the court's conclusion.

**{¶25}** The evidence presented at trial uniformly demonstrated that the Board convened with the JOTF for informational purposes in order to understand the community's perceptions of the opioid and jail-overcrowding problems. The Board also sought the JOTF's input on potential ways of approaching or managing the problems. And, perhaps most significantly, there was no evidence that the Board members who attended the meetings exchanged any ideas amongst one another. To the contrary, each witness stated the Board members said little to nothing at the meetings. The testimony indicated the Board members attended the meetings to listen to the views and perspectives of the community. Thus, the evidence overwhelmingly supported the trial court's conclusion that no "deliberations," as contemplated by the OMA, occurred during the meetings convened with the JOTF. The trial court did not err in drawing this conclusion.

**{¶26}** Further, the parties stipulated that the August 7, 2015 gathering was a pre-arranged meeting. Testimony indicated that Board members met with the PCTP at

the Portage County Jail on that date. According to PCTP member, Tom Zawistowski, the purpose of the meeting was to inform the PCTP of the opioid crisis and the attendant jail over-crowding issue. Mr. Zawistowski also stated the Board sought the support of the PCTP on a potential tax measure that would help fund the management of the problems. Members of the PCTP also offered the Board their input on how it might communicate its concerns more effectively to the community at large. Mr. Zawistowski characterized the meeting as "information sharing."

{¶27} PCTP member Carl Crawford testified the meeting was arranged to get the PCTP's opinion on a potential tax levy, or other funding options, that would help manage the jail-overcrowding issue. Mr. Crawford stated no decisions were made during the meeting. He maintained the meeting was an open discussion and informational in nature. Other PCTP members, Ann Kaczmarek and Patricia Stephens, echoed this testimony.

{¶28} There was no clear testimony that the Board members were discussing the tax proposal with each other; and there was no testimony that the Board was weighing the pros and cons of the possible tax levy such that a deliberative decision was reached during the meeting with the PCTP. Given the testimony, the meeting represented an opportunity for the Board to determine the PCTP's position on the possible passage of a levy, i.e., it was limited to information gathering and fact finding. We therefore conclude no "deliberations" took place at the August 7, 2015 meeting. Hence, the requirements of the OMA did not apply to that meeting.

{¶29} Reviewing the evidence and the credibility of the witnesses, we conclude the trial judge did not clearly lose his way in concluding the Board did not violate the

11

OMA when it held the five meetings at issue. The judgment is therefore consistent with the weight of the evidence.

{¶30} Appellant's two assignments of error lack merit.

{¶31} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J.,

DIANE V. GRENDELL, J.,

concur.