[Cite as *Ames v. Rootstown Twp. Bd. of Trustees*, 2019-Ohio-5412.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| BRIAN M. AMES, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2019-P-0019** |
| ROOTSTOWN TOWNSHIP BOARD OF TRUSTEES, | : | |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2017 CV 00410.

Judgment: Affirmed in part, reversed in part, and remanded.

*Brian M. Ames,* pro se, 2632 Ranfield Road, Mogadore, OH 44260 (Plaintiff-Appellant).

*James F. Mathews* and *Andrea K. Ziarko,* Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Defendant-Appellee).


CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, Brian M. Ames, appeals from the February 13, 2019 judgment of the Portage County Court of Common Pleas granting summary judgment in favor of appellee, Rootstown Township Board of Trustees.  For the reasons discussed below, we affirm in part, reverse in part, and remand for further proceedings.

{¶2} In 2017, Mr. Ames filed a complaint against the Rootstown Township Board of Trustees ("Board") alleging 16 violations of the Ohio Open Meetings Act, R.C. 121.22 ("OMA"). Specifically, in Counts I, IV, V, VI, and VII, Mr. Ames asserts that the Board held executive sessions for unapproved purposes on five dates: May 4, 2015; September 22, 2015; October 13, 2015; November 24, 2015; and December 8, 2015.

{¶3} In Counts VIII, IX, XI, XII, XIII, XIV, XV, and XVI, Mr. Ames asserts the Board entered into executive session to discuss economic issues but violated the OMA by failing to determine by roll call vote that the executive session was "necessary to protect the interests of the applicant or the possible investment or expenditure of public funds to be made in connection with the economic development project," according to R.C. 121.22(G)(8). The relevant dates of those meetings are February 9, 2016; March 8, 2016; April 12, 2016; May 10, 2016; May 24, 2016; June 14, 2016; June 28, 2016; and September 13, 2016.

{¶4} Mr. Ames also asserts, in Count II, that on July 9, 2015, the Board held a special meeting for the purpose of reviewing and approving the 2016 budget, but that the Board violated the OMA by also voting to pay invoices through a resolution during that meeting, which was not the purpose for which notice was given.

{¶5} In Count III, Mr. Ames claims that on August 11, 2015, the Board entered into executive session for the purpose of employee discipline and pending litigation, which violated the OMA because no attorney was present.

{¶6} And, finally, in Count X, Mr. Ames claims that on March 22, 2016, following adjournment of a Board meeting, the Board took action to hire an employee in violation of the OMA.

{¶7} The sole basis for these claims is the meeting minutes of each meeting. Following discovery, both parties moved for summary judgment. Each attached a copy of the meeting minutes and a copy of the opposing party's responses to interrogatories. In addition, the Board attached an affidavit of David McIntyre, a trustee of the Board who was in attendance at the relevant sessions, attesting to the content of the meetings. The trial court granted the Board's motion for summary judgment and denied Mr. Ames'. Mr. Ames now appeals, assigning seven errors for our review.

{¶8} Appellate courts review summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 205 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers,* 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶27.

{¶9} Mr. Ames' first four assignments of error relate to the same facts: namely, that the court erred in its finding that the "conferences held on May 4, 2015, August 11, 2015, September 22, 2015, October 13, 2015, November 24, 2015, and December 8, 2015 * * * did not violate the OMA" because the conferences were informational only and did not include deliberations or official actions, and thus, were not "meetings," as defined by the statute. Accordingly, the first four assignments of error will be addressed together. The first states:

{¶10} The Trial Court erred in evaluating whether particular gatherings of the Board constitute meetings. (T.d. 42 page 5)

{¶11} Under this assignment of error, Mr. Ames asks: does the existence of official meeting minutes of a public body conclusively prove that a meeting of that public body occurred?

3

{¶12} The second states:

{¶13} The Trial Court erred in finding that although referred to as "executive sessions" by the Board in its minutes, conferences between the Board and its attorney, or conferences to obtain information from the Board's attorney through an employee of the township does not constitute "meeting" or "executive session" when no deliberations or official actions took place. (T.d. 42 page 8)

{¶14} Under this assignment of error, Mr. Ames raises two issues: (1) Is an executive session ever a meeting as defined by R.C. 121.22(B)(2)? And (2) must a public body deliberate or take official action in an executive session for it to constitute an executive session?

{¶15} The third states:

{¶16} The Trial Court erred in finding that [t]he right of members of a public body to meet privately is not limited to the statutory exceptions listed [] [sic] under R[.]C. 121.22(G). (T.d. 42 page 6).

{¶17} Under this assignment of error, Mr. Ames raises two issues: (1) is the right of the Board to meet privately limited to the statutory exceptions listed in R.C. 121.22(G); and (2) is the motion and vote to conduct an executive session recorded in the official meeting minutes of a public body conclusive evidence to prove that an executive session occurred in that meeting and to support that holding an executive session violated the OMA?

{¶18} The fourth states:

{¶19} The Trial Court erred by ruling that what the Board referred to as "executive sessions" in its minutes do not constitute "meetings" or "executive sessions". (T.d. 42 pg 8).

{¶20} Under this assigned error, Mr. Ames asks: may a public body exclude the public from part of an open meeting by moving into executive session and later contend

4

that the executive session is instead a "so-called executive session" or a "conference" not subject to the OMA?

{¶21} The party alleging a violation of the OMA has the burden to prove, by a preponderance of the evidence, that the OMA was violated or threatened to be violated by the relevant public body. *State ex rel. Hardin v. Clermont Cty. Bd. of Elections*, 12th Dist. Clermont Nos. CA2011-05-045 & CA2011-06-047, 2012-Ohio-2569, ¶23. Once the violation or threatened violation is established, the burden shifts to the public body to show that the meeting fell under one of the OMA exceptions. *Id.* at ¶25. If it does so, the burden again shifts to the plaintiff to show the exception is not applicable or valid. *Id.*

{¶22} This court has previously held that in order for the OMA to apply, a public body must simultaneously (1) conduct a meeting and (2) deliberate concerning public business. *Holeski v. Lawrence*, 85 Ohio App.3d 824, 829 (11th Dist.1993). This court, however, has recently completed a critical review of that precedent and found it cannot withstand the deeper scrutiny that has come with increased litigation regarding the OMA. *Bode v. Concord Twp.,* 11th Dist. Lake No. 2018-L-116, 2019-Ohio-5062, ¶3. Revising our earlier precedent, this court held:

> {¶23} (1) The OMA applies to any "meeting," which means (a) any prearranged discussion (b) of the public business of the public body (c) by a majority of its members.
>
> {¶24} (2) "Discussion of the public business" means the exchange of words, comments or ideas by the public body.
>
> {¶25} (3) "Public business" means matters within the purview of a public body's duties, functions and jurisdiction.
>
> {¶26} (4) The following activities do not constitute a "meeting": (a) information-gathering, fact-finding, or the gathering of facts and information for ministerial purposes unless there is also a

5

discussion of public business between the members of the public body during the activity; or (b) a majority of a public body being in the same room and answering questions or making statements to other persons who are not public officials, even if those statements relate to the public business.

{¶27} (5) The OMA applies to any "executive session," which means (a) a portion of a "meeting" (b) held after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session, (c) held for the sole purpose of the consideration of any of the matters set forth in R.C. 121.22(G)(1) through (8), and (d) at which the public may be excluded.

{¶28} (6) The OMA applies to a "meeting" or an "executive session" regardless of whether the public body deliberates.

{¶29} (7) A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were (a) for a purpose specifically authorized in division (G) or (J) of R.C. 122.21 and (b) conducted at an executive session held in compliance with R.C. 121.22.

{¶30} (8) And finally, a public body "deliberates" by thoroughly discussing all of the factors involved in a decision, carefully weighing the positive factors against the negative factors, cautiously considering the ramifications of its proposed action, and gradually arriving at a proper decision which reflects the legislative process. *Id.* at ¶5-12.

{¶31} We review Mr. Ames' errors in light of this new precedent. Though he need not show that the Board conducted deliberations, to prevail on a motion for summary judgment, he must show that the Board violated the OMA. Here, Mr. Ames asserts that the Board violated the OMA by convening executive sessions for purposes not authorized by statute.

{¶32} David McIntyre swore in his affidavit that no discussions or deliberations as to public business were held during the May 4, 2015, September 22, 2015, October 13, 2015, November 24, 2015, and December 8, 2015 so-called executive sessions. However, the Board entered into each of these executive sessions during properly

6

convened meetings that were not adjourned until after the conclusion of the executive session.

{¶33} The stated purposes of these executive sessions were to discuss "legal matters" regarding the "JEDD contract" with Attorney Chad Murdock. The Board asserts these executive sessions were excepted from the OMA because (1) they were information-gathering in nature and did not contain discussions of public business, and (2) the conversations were protected by attorney-client privilege.

{¶34} In support of its assertions that the information-gathering nature of these executive sessions exempted them from the open meeting requirements, the Board cites *Cincinnati Enquirer v. Cincinnati Bd. of Edn.*, 192 Ohio App.3d 566, 2011-Ohio-703 (1st Dist.), which found "the timing of a public body's investigative or information-gathering session is not determinative of whether an OMA violation has occurred. * * * In the absence of deliberations or discussions by board members at the session, the session was not a "meeting" as defined by the OMA, so it was not required to occur in public." *Id.* at ¶14-15. In *Cincinnati Enquirer,* the Cincinnati Board of Education held an emergency meeting at which the board members entered into executive session to discuss legal issues surrounding a proposed payment deferral from the city council with legal counsel. The trial court found, and First District affirmed, that even though the board held a nonpublic information-gathering session during a meeting, the information-gathering session itself was not a "meeting" as defined by the OMA because no deliberations or official action took place outside of the public's hearing. Therefore, the First District concluded, the information-gathering sessions were not required to occur in public. *Cincinnati Enquirer, supra,* at ¶14 ("So even though the nonpublic information-

7

gathering session had occurred during a regular meeting of the public body, no violation of the OMA had occurred because the session was not a meeting as that term is defined by the act.") However, *Cincinnati Enquirer* is not binding on this court, nor do we agree with the First District's conclusion.

{¶35} Pursuant to R.C. 121.22(C), meetings must be "open to the public *at all times.*" (Emphasis added.) The only exceptions enumerated by R.C. 121.22 are for properly convened executive sessions, which this court has defined as "(a) a portion of a "meeting" (b) held after a majority of a quorum of the public body determines, by a roll call vote, to hold an executive session, (c) held for the sole purpose of the consideration of any of the matters set forth in R.C. 121.22(G)(1) through (8), and (d) at which the public may be excluded." *Bode, supra,* at ¶9. Thus, it follows that any nonpublic part of a meeting, unless excepted by law, violates the OMA.

{¶36} R.C. 121.22(G) does not except any and all conferences with an attorney but limits the exception to "[c]onferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action." R.C. 121.22(G)(3). The meeting minutes here do not reflect, nor does the Board argue, that these conversations with Attorney Murdock pertain to "pending or imminent court action." Thus, it cannot be said these information-gathering sessions were properly convened executive sessions exempted from the OMA open meeting requirements pursuant to any R.C. 121.22(G) exception. Furthermore, during discovery, the Board admitted that no attorney was present during the August 11, 2015 meeting, and thus it is clear this session does not fall under the R.C. 121.22(G)(3) exception.

8

{¶37} As this court held in *Bode,* information-gathering and fact-finding sessions themselves do not constitute meetings. However, this does not alter the R.C. 121.22(C) requirement that <u>all</u> parts of a meeting must be kept public unless otherwise excepted by law. Thus, if an information-gathering and fact-finding session is held during a meeting, it must be done in a manner open to the public. Any nonpublic, nonexempt session held during a meeting violates the OMA.

{¶38} The Board also asserts, and the trial court found, that these information-gathering executive sessions were protected by attorney-client privilege and that attorney-client privilege is an exception pursuant to R.C. 121.22(A), which forgoes the open meeting requirements as a "subject matter specially excepted by law." The trial court agreed and further found that because no deliberations or official action took place at these conferences, they were not "meetings" or "executive sessions," as defined by the OMA.

{¶39} This and other appellate districts have held that "the OMA 'does not prevent public officials from privately seeking and receiving advice from their legal counsel.'" *Cincinnati Enquirer, supra,* at ¶13. *See also Holeski v. Lawrence*, 85 Ohio App.3d 824, 829, (11th Dist.1993); *Hardin, supra,* at ¶49. Contrary to the Board's argument, however, this does not mean that any time a public body seeks legal advice it is exempt from the OMA; to the contrary: "'the General Assembly, in limiting the circumstances in which such a discussion can be held in executive session, has required a partial waiver of the privilege by the client-public body.'" *State ex rel. Cincinnati Enquirer v. Hamilton County Com'rs,* 1st Dist. Hamilton No. C-010605, 2002

WL 727023, (Apr. 26, 2002) at *5, quoting Recchie & Cheroski, *Government in the Sunshine: Open Meeting Legislation in Ohio*, 37 Ohio St.L.J. 497, 509–510 (1976).

{¶40} The Twelfth District Court of Appeals addressed this issue in *Hardin, supra,* stating:

> {¶41} R.C. 121.22(G) lists the matters a public body may consider privately in an executive session, including matters of imminent or pending litigation when discussed with the public body's counsel, R.C. 121.22(G)(3), and matters required to be kept confidential by state or federal law. R.C. 121.22(G)(5). The exceptions in R.C. 121.22(G) are distinct, separate exceptions that apply in specific situations. At heart, the Board's argument is that R.C. 121.22(G)(5) is a catch-all provision that applies whenever a public body confers with its counsel during an executive session. We disagree. If it were so, there would have been no need for the legislature to include R.C. 121.22(G)(3). *Id.* at ¶¶77-78.

{¶42} We agree with the Twelfth District. By enumerating exceptions in R.C. 121.22(G)(3) and (G)(5), the General Assembly limited the circumstances in which such a discussion can be held in executive session, thus requiring a partial waiver of the privilege outside of R.C. 121.22(G).

{¶43} In this case, the Board held a meeting, as defined by the OMA. During that meeting, the Board held a nonpublic, information-gathering session that they termed an "executive session." The nonpublic, information-gathering session did not meet any of the enumerated reasons for holding an executive session of R.C. 121.22(G), nor was the session protected by attorney-client privilege. Because the Board held nonpublic sessions during these meetings for reasons not authorized by law, the Board violated the OMA.

{¶44} Accordingly, Mr. Ames' first four assignments of error, relating to counts I, III, IV, VI, and VII, have merit.

{¶45} Mr. Ames' fifth assignment of error states:

10

{¶46} The Trial Court erred by ruling that a public body can pass a resolution to pay invoices at a special meeting when the notice did not include that resolution. (T.d. 42 pg 10).

{¶47} Mr. Ames raises two issues under this assigned error: (1) may a public body exceed the scope of the purpose of a special meeting as published in the notice of the special meeting, and (2) does a logical relationship exist between bills paid on July 9, 2015 and the Board's 2016 tax budget?

{¶48} "'[S]pecial meetings' are 'all meetings other than "regular" meetings.'" *Hoops v. Jerusalem Tp. Bd. of Trustees*, 6th Dist. Lucas No. L-97-1240, 1998 WL 172819, (Apr. 10, 1998) *4, quoting 1988 Ohio Atty.Gen.Ops. No. 88-029. R.C. 121.22(F) requires that the public body give at least 24-hour notice to the public of the time place and purpose of any special meeting. *See also Jones v. Brookfield Twp. Trustees*, 11th Dist. Trumbull No. 92-T-4692, 1995 WL 411842 (Jun. 30, 1995). "[N]otice of the special meeting must be sufficient for a person to determine the purpose of the meeting." *Id.* at *6. Special meetings can be held for more than one purpose, but every purpose must be provided in the notice of the special meeting. R.C. 121.22(F); *see also Keystone Commt. v. Switzerland of Ohio Sch. Dist. Bd. of Edn.*, 7th Dist. No. Monroe 15 MO 0011, 2016-Ohio-4663, ¶42.

{¶49} It is uncontested that on July 9, 2015, the Board held a special meeting. The stated purpose was to approve the 2016 tax budget. At that meeting, two resolutions were discussed and passed: (1) approval of the 2016 tax budget, and (2) a motion to pay the invoices on file. Mr. Ames asserts that the Board violated the OMA by not specifically stating in the notice that the special meeting would cover the paying of invoices. The Board argued that the two topics were sufficiently related such that specific notice of payment of invoices was not necessary. The trial court granted

11

summary judgment in the Board's favor finding that a resolution to pay bills on file was logically related to the approval of the 2016 tax budget and, thus, the notice was sufficient.

{¶50} Mr. Ames asserts that because the 2016 budget was approved first, the paying of invoices was not a "necessary precedent to approval of the budget." He further asserts there was no "nexus" between reviewing the budget and paying bills on file.

{¶51} The Board counters that the notice provided sufficient detail to apprise the public of the budgetary matters discussed. Further, it asserts that adequate notice was provided by an agenda which was "made available" before the meeting and included both resolutions. However, the record contains insufficient evidence to support a finding that the agenda in question would be considered adequate notice pursuant to R.C. 121.22(F) as there is no mention of how far in advance the agenda was provided, or how it was made available to the public, in order to ascertain whether it constituted statutorily sufficient notice. Nevertheless, we find the notice stating the purpose of approving the 2016 tax budget adequately served to inform the public of the purpose of the meeting in which invoices were approved, and thus, did not violate the OMA.

{¶52} Mr. Ames cites numerous cases in support of his argument, but they are clearly distinguishable. In *Hoops, supra*, the Jerusalem Township Board held special meetings "to receive bids for the refurbishing of a Ford/Sutphen Pumper-Tanker" and "receive sealed bids for the sale of a GMC Fire Tanker." In addition to discussing these topics, the Jerusalem Township Board also discussed basketball fees, garbage collection, and the acquisition of a John Deere tractor and equipment for the

12

maintenance of baseball diamonds. The Sixth District Court of Appeals concluded notice was insufficient to inform the public of the full scope of the meeting.

{¶53} In *Keystone, supra,* the school board held a special meeting for the stated purpose of discussing "the 2015-2016 school year." The court found the board exceeded the scope of the special meeting when the only topic discussed in that special meeting was the closing of Beallsville High School. The Seventh District Court of Appeals found the stated purpose "did not serve to inform the public of the true purpose of the meeting." *Id.* at ¶36.

{¶54} In *State ex rel. Young v. Lebanon City School Dist. Bd. of Edn.*, 12th Dist. Warren No. CA2012-02-013, 2013-Ohio-1111, the board published notice of the special meeting with the purpose of "community information." At that meeting, the board entered into executive session to discuss employee negotiations and employee compensation. The Twelfth District Court of Appeals found there was insufficient evidence to relate "community information" to employment matters and found summary judgment against the board was appropriate. *Id.* at ¶45.

{¶55} Finally, in *Jones, supra,* this court ruled against the board, finding it did not comply with the OMA notice requirements when its notice of special meeting failed to state *any* purpose for the open session, despite intending to consider or vote on the non-renewal of the plaintiff's employment contract. We noted that "although a public body is required to provide notice of the purpose of a special meeting, this notice can merely state that the meeting is being held for general purposes, if that is the actual reason for the meeting." *Id.,* at *7.

13

{¶56} In each of the cases cited by Mr. Ames, there was no reasonable connection between the purported purpose of the meeting and the full scope of the content discussed at the meetings. However, from the notice the Board here provided, the public could reasonably infer that a budget discussion would include a discussion about the payment of invoices. A budget is "the amount of money that is available for, required for, or assigned to a particular purpose." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/budget (accessed July 30, 2019). One aspect of the approval of a budget is the approval of where certain monies are to be spent, such as the payment of certain invoices. Accordingly, we find that budget approval and payment of invoices we sufficiently related and, thus, the notice of the July 9, 2015 special meeting complied with the requirements of R.C. 121.22(F).

{¶57} Mr. Ames' fifth assignment of error is without merit.

{¶58} Mr. Ames' sixth assignment of error states:

{¶59} The Trial Court erred by ruling that action taken after the adjournment of a meeting is still within the confines of the public meeting and that it is not a violation of the OMA to adjourn a properly noticed open meeting and then to reconvene to conduct public business. (T.d. 42 pg 11).

{¶60} Specifically, he asks: does the adjournment of a meeting by a public body irrevocably close the meeting barring the taking of official action after adjournment? We find this question is outside the scope of the issue at hand; in this case, no action was taken outside an open meeting.

{¶61} The undisputed facts show that on March 22, 2016, the Board held a properly-convened open meeting, which adjourned at 6:37 p.m. A few minutes later, the Board realized it overlooked making a motion to hire an employee and reconvened at 6:45 p.m. to hire that employee. David McIntyre, who was in attendance at that

14

meeting, swore in his affidavit that "everyone who was at the open meeting prior to the first adjournment had remained in the meeting room until the second adjournment. There were no deliberations or discussions held outside of an open meeting."

{¶62} Mr. Ames claims the first adjournment irrevocably ended the first meeting, presumably such that the Board, in order to conform to OMA requirements, would have to publish notice of a special meeting with 24-hours' notice before reconvening to address the overlooked matter, or otherwise hold the overlooked matter until the next regularly scheduled meeting. However, the OMA is not as inflexible as Mr. Ames suggests.

{¶63} The Board here remedied the oversight in a manner that was well within the intent and purpose of the OMA. It recognized that the hiring of an employee was required to take place in an open meeting. As no party to the open meeting had yet left the room, and a mere seven minutes passed since the adjournment of the first open meeting, the Board reconvened to conduct the overlooked official business. These two meetings were effectively the same meeting. *See State ex rel. Cincinnati Post v. Cincinnati,* 76 Ohio St.3d 540 (1996) (When a public body attempted to avoid triggering the OMA's public meeting requirements by holding "back-to-back sessions discussing exactly the same public issues" with less than a majority of the public bodies members, the court "liberally construed [the back-to-back sessions] as two parts of the same meeting.")

{¶64} The events of March 22, 2016 were well within the intent and purpose of the OMA. No official action took place outside an open meeting. The public had every opportunity to attend either part of the public meeting; no member of the public who was

15

present for the meeting had yet left after the first adjournment. Mr. Ames questions the veracity of David McIntyre's affidavit without putting forth any evidence to rebut it. However, Mr. Ames was required to present more than a mere denial of David McIntyre's sworn affidavit to prove there remained a question of material fact sufficient to overcome summary judgment. In light of his failure to do so, Mr. Ames' sixth assignment of error is without merit.

{¶65} Mr. Ames' seventh and final assignment of error states:

{¶66} The Trial Court erred by overruling Ames's motion for summary judgment and granting the Board's (T.D. 42 pg 11).

{¶67} Specifically, Mr. Ames asks: was Ames entitled to summary judgment as a matter of law, there being no genuine issue as to any material fact?

{¶68} Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, with that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C).

{¶69} As discussed under the first four assignments of error, the Board violated the OMA as Mr. Ames asserts in Counts I, III, IV, V, VI, and VII. Furthermore, as discussed under the fifth and sixth assignments of error, we find Mr. Ames failed to establish that the Board had violated the OMA on the dates relevant to Counts II and X. Accordingly, we find the court properly granted summary judgment in the Board's favor on these counts and properly denied Mr. Ames' motion.

{¶70} We turn our focus now to the remaining counts: VIII, IX, XI, XII, XIII, XIV, XV, and XVI. Mr. Ames asserts that on February 9, 2016, March 8, 2016, April 12,

16

2016, May 10, 2016, May 24, 2016, June 14, 2016, June 28, 2016, and September 13, 2016, the Board attempted to enter into executive session according to R.C. 121.22(G)(8) to discuss economic development but failed to "determine by a roll call vote that the executive session was necessary to protect the interests of the applicant or the possible investment or expenditure of public funds to be made in connection with the economic development project," as required by R.C. 121.22(G)(8). Under this statute, a public body may enter into executive session:

{¶71} [t]o consider confidential information related to the marketing plans, specific business strategy, production techniques, trade secrets, or personal financial statements of an applicant for economic development assistance, or to negotiations with other political subdivisions respecting requests for economic development assistance, provided that both of the following conditions apply:

{¶72} (a) The information is directly related to a request for economic development assistance that is to be provided or administered under any provision of Chapter 715., 725., 1724., or 1728. or sections 701.07, 3735.67 to 3735.70, 5709.40 to 5709.43, 5709.61 to 5709.69, 5709.73 to 5709.75, or 5709.77 to 5709.81 of the Revised Code, or that involves public infrastructure improvements or the extension of utility services that are directly related to an economic development project.

{¶73} (b) A unanimous quorum of the public body determines, by a roll call vote, that the executive session is necessary to protect the interests of the applicant or the possible investment or expenditure of public funds to be made in connection with the economic development project.

{¶74} Here, the minutes do not reflect that the Board met the requirements of R.C. 121.22(G)(8)(a), nor specifically determined by roll call vote the requirements of R.C. 121.22(G)(8)(b), which, as Mr. Ames correctly asserts, violates the OMA. The Board counters "[t]here is no requirement that the minutes contain a verbatim recitation of the motion read from the code; rather, the minutes 'need only reflect the general subject matter of discussion in executive session'" pursuant to R.C. 121.22(C).

17

{¶75} We have recently addressed whether the phrase "general subject matter" in the OMA provision includes stating the purpose of going into executive session in *State ex rel. Ames v. Brimfield Township Board of Trustees*, 11th Dist. Portage No. 2019-P-0017, 2019-Ohio-4926. We held in the affirmative, stating:

> {¶76} The minutes must reflect each of the purposes for which the executive session was held in order for the public to discern whether the non-public meeting was excepted under the OMA. * * * Interpreting R.C. 121.22(C) any other way is contrary to the purpose and intent of the OMA. A citizen should not be forced to file a mandamus action to determine whether or not a board has conducted business in a lawful manner under the OMA. We agree, however, with the [*State ex rel.*] *Laughlin* [*v. James*, 115 Ohio St.3d 231, 2007-Ohio-4811] decision in that there is no requirement that the minutes provide any further specificity. *Id.* at ¶24.

{¶77} Thus, when entering into executive session under R.C. 121.22(G)(8), the meeting minutes must reflect that the Board complied with both provisions of R.C. 121.22(G)(8)(a) and (b).

{¶78} Here, the minutes merely stated that executive sessions were held "to discuss economic development assistance concerning JEDD" and was entered into by a unanimous roll call vote for each of these dates; they do not specify, as required by (a), that the information is directly related to a request for economic development assistance or involves a public infrastructure improvement or extension of utility services that are directly related to an economic development project, nor, as required by (b), that a unanimous quorum determined by roll call vote the executive session was necessary to protect the interests of the applicant or the possible investment or expenditure of public funds to be made in connection with the economic development project.

18

{¶79} While David McIntyre's affidavit attests to the fact that the Board reads the relevant parts of R.C. 121.22(G) when making a motion, and that on these dates the Board made motions "to move into executive session * * * by a determination of the unanimous quorum of [the Board] that the executive sessions were necessary to protect the interest of the applicant or the possible investment or expenditure of public funds to be made in connection with the economic development project," the Board minutes did not reflect that the public body complied with the statute by expressly stating the language from R.C. 121.22(G)(8)(a) and (b) in the meeting minutes. The public would not be able to determine from the minutes that the Board conducted business in a lawful manner.

{¶80} Therefore, the Board violated the OMA on February 9, 2016, March 8, 2016, April 12, 2016, May 10, 2016, May 24, 2016, June 14, 2016, June 28, 2016, and September 13, 2016. Accordingly, the court erred in granting summary judgment for the Board. As there were no outstanding issues of material fact, the trial court should have denied the Board's motion for summary judgment, granted Mr. Ames' and issued an injunction or injunctions against the Board.

{¶81} Mr. Ames' seventh assignment of error has merit as it relates to Counts I, III, IV, V, VI, VII, VIII, IX, XI, XII, XIII, XIV, XV, and XVI; as it relates to Counts II and X, this assignment of error is without merit.

{¶82} Finally, when an injunction is issued, R.C. 121.22(I)(2)(a) allows for an award of attorney's fees, court costs, and civil forfeitures:

{¶83} If the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction and shall award to that party all

19

court costs and, subject to reduction as described in division (I)(2) of this section, reasonable attorney's fees. The court, in its discretion, may reduce an award of attorney's fees to the party that sought the injunction or not award attorney's fees to that party if the court determines both of the following:

{¶84} (i) That, based on the ordinary application of statutory law and case law as it existed at the time of violation or threatened violation that was the basis of the injunction, a well-informed public body reasonably would believe that the public body was not violating or threatening to violate this section;

{¶85} (ii) That a well-informed public body reasonably would believe that the conduct or threatened conduct that was the basis of the injunction would serve the public policy that underlies the authority that is asserted as permitting that conduct or threatened conduct.

{¶86} "[T]he general rule is that '[u]pon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.'" *State v. Roberts*, 150 Ohio St.3d 47, 2017-Ohio-2998, ¶45 quoting *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113 (1982). The point at which the error occurred in the instant case is in the grant of the Board's motion for summary judgment and the denial of Mr. Ames' on Counts I, III, IV, V, VI, VII, VIII, IX, XI, XII, XIII, XIV, XV, and XVI. Therefore, we remand the matter to the trial court to issue the injunction or injunctions, consistent with this opinion, and for a determination of the attorney's fees, court costs, and civil forfeitures, if any, to which Mr. Ames is entitled.

{¶87} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed in part, reversed in part, and remanded.

TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.

20